# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

## Nos. 99-4129EM, 99-4130EM
_____

_____                          *
                                       *
No. 99-4129EM                          *
                                       *
_____                          *
                                       *
United States of America,              *
                                       *
        Appellee,                      *
                                       *
v.                                     *
                                       *
Leon J. Howard, Jr.,                   *
                                       *   On Appeal from the United
        Appellant.                     *   States District Court
                                       *   for the Eastern District
                                       *   of Missouri.
_____                          *
                                       *
No. 99-4130EM                          *
                                       *
_____                          *
                                       *
United States of America,              *
                                       *
        Appellee,                      *
                                       *
v.                                     *
                                       *
John K. Robinson,                      *
                                       *
        Appellant.                     *

_____

Submitted: November 14, 2000

Filed: December 11, 2000
_____

Before McMILLIAN, RICHARD S. ARNOLD, and BOWMAN, Circuit Judges.
_____

RICHARD S. ARNOLD, Circuit Judge.

A jury convicted Leon J. Howard and John K. Robinson of the following offenses: conspiracy to commit wire fraud and interstate transportation of stolen property, in violation of 18 U.S.C. § 371; thirteen counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; ten counts of interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2; one count of conspiracy to engage in monetary transactions in criminally derived property that was of a value greater than $10,000, in violation of 18 U.S.C. § 1956(g)(as it appeared in 1992); and three counts of engaging in monetary transactions in criminally derived property having a value greater than $10,000, in violation of 18 U.S.C. §§ 1957 and 2.

On appeal Mr. Robinson asserts that the District Court[1] erred in three instances: (1) in finding that he was an organizer or leader pursuant to U.S.S.G. § 3B1.1(a), (2) in admitting evidence that Zurich American Insurance Company filed a lawsuit against a company with which the defendant was associated; and (3) in determining the amount of the monetary loss for which he was responsible. Mr. Howard argues that the Court erred in overruling his motion for judgment of acquittal, in finding that he was an organizer or leader pursuant to U.S.S.G. § 3B1.1(a), and in determining the amount of the monetary loss for which he was responsible. We affirm.

_____

[1]The Hon. Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

I.

The facts are presented in the light most favorable to the jury's verdict. See United States v. Maza, 93 F.3d 1390, 1393 (8th Cir. 1996), cert. denied, 519 U.S. 1138 (1997). The facts reveal two schemes. The first scheme, not alleged in the indictment but relevant for purposes of sentencing, transpired in Iowa. The second scheme was alleged in the indictment and was the one for which the defendants were convicted.

In 1992 Mr. Howard and Mr. Robinson, the president of MTL International Finance, agreed to find investors for the sale and trade of Guaranteed Insurance Contracts, or GICs. GICs are annuities whose value and payments are guaranteed by present and future insurance premiums paid to the issuing insurance company.

A. The Iowa Investments

Mr. Howard approached Lyle Pohlman and stated that MTL needed to purchase a company to sell and trade GICs. Mr. Pohlman sold his corporation, Greystone International, for $50,000. Barry Balduf, a stockbroker for Bryton Capital Management, Mr. Pohlman, and Gene Krinn, a Bryton employee, met with officers from Norwest Bank to open two Greystone accounts.

Mr. Robinson told Patrick Mitchell and Steve Cameron that MTL had the ability to invest in the sale and trade of GICs. Mr. Robinson stated that GICs could only be purchased for ten million dollars, but individual investors could pool their money in a secured account that would "trigger a line of credit" to purchase the GICs for approximately 80-85 per cent. of their face value. The GICs could be resold for $10 million, with the investors receiving the profit. Mr. Mitchell and Mr. Cameron each deposited $25,000 into the Greystone account. Mr. Howard directed Mr. Pohlman to wire $9,000 to the personal account of one of Mr. Howard's friends. Later, Mr.

Howard instructed Mr. Pohlman to wire $25,000 to Mr. Howard's account in St. Louis, Missouri.

In 1993, a joint venture between MTL and Bushmills Investment, LTD, led to Casey Paik's investing $250,000. Mr. Paik was informed that MTL could provide GICs that would be bought at one price and sold at another, with the investors receiving the profit.

Mr. Howard told David Hollander that Mr. Robinson was his business associate and informed Mr. Hollander that he could invest money into a secured account that would be used to "trigger a line of credit" to purchase the GICs. The profit from the investment would result from buying the GIC at one price and selling it at another. Mr. Hollander invested $70,000 in the Greystone account.

Mr. Howard instructed Barry Balduf to issue a $200,000 cashier's check to Joel Jordan and Kenneth Mitchell, stating that the money was to be used to trigger a $10 million letter of credit to purchase a GIC. Norwest Bank could not verify the line of credit, but on Mr. Robinson's prompting Mr. Krinn delivered the check to Mr. Jordan and Mr. Mitchell. Later that day, Mr. Mitchell and Mr. Jordan attempted to cash the check and wire money to a Swiss account. Mr. Krinn obtained a court order blocking the wire transfer.

### B. The Scheme Charged in the Indictment

Mr. Howard was introduced to Sidney Stires of Stires & Company, a New York investment firm. He told Mr. Stires that MTL could obtain GICs from major European insurance companies. Mr. Howard enlisted Stires & Co. to solicit institutional investors. Using information provided by Mr. Howard and Mr. Robinson, Stires & Co. prepared a brochure explaining GICs.

Mr. Howard told Harry Walker[2] that Mr. Howard and Mr. Robinson had the exclusive right to sell GICs in this country. Mr. Howard stated that individuals could pool their money to trigger a leveraged line of credit and receive a profit from the resale of the GICs. Mr. Walker told Greg Redelico that small investors could pool their money to trigger a line of credit to purchase GICs. Mr. Redelico solicited Bruce Perhach, Rick Cyburt, and Dennis Kavanaugh to invest in GICs. Mr. Howard sent Mr. Walker an investor agreement stating that the money from the investment was to be deposited in the Greystone account. Later Mr. Robinson opened an MTL account at Stires & Co. Both he and Mr. Howard instructed Mr. Walker to have the investors deposit their money into the MTL account at Stires & Co. instead of the Greystone account.

Mr. Howard had $60,000 wired from the MTL account at Stires & Co. to his account in St. Louis. On the same day, he wired $12,000 from his St. Louis account to an MTL account in California. The next day, $10,000 was wired from the MTL account at Stires & Co. to Mr. Howard's account in St. Louis. The same day, he wired $5,000 from his St. Louis account to a MTL account in California. Approximately $5,000 was wired from the MTL account at Stires & Co. to Mr. Howard's personal account in St. Louis.

Mr. Walker opened a corporate investment account at Stires & Co. under the name of Equity Action. Mr. Robinson and Mr. Howard told Mr. Walker that the profits from GIC transactions would be deposited in the Equity Action account at Stires & Co. Mr. Walker also opened a Equity Action account in Pennsylvania.

---

[2]Mr. Walker pleaded guilty to engaging in a monetary transaction in property derived from specified unlawful activity and agreed to cooperate with the government in its investigation and prosecution of Mr. Howard and Mr. Robinson.

Mr. Walker wired $70,000 from the Equity Action account at Stires & Co. to an Equity Action account in Pennsylvania. Mr. Howard directed Mr. Walker to wire $40,000 from the Equity Action account in Pennsylvania to Mr. Howard's account in St. Louis. Mr. Howard then wired $10,000 from his St. Louis account to the MTL account in California. Later, approximately $5,000 was wired from the MTL account at Stires & Co. to Mr. Howard's account in St. Louis. The next day, Mr. Howard wired approximately $4,000 from his account in St. Louis to the MTL account in California. Mr. Walker wired $50,000 from the Equity Action account at Stires & Co. to the Equity Action account in Pennsylvania.

Mr. Howard directed Mr. Walker to wire $10,000 from the Equity Action account in Pennsylvania to Mr. Howard's account in St. Louis. The next day, Mr. Walker wired $15,000 from the Equity Action account at Stires & Co. to the Equity Action account in Pennsylvania. Mr. Walker sent a $5,000 check to Mr. Perhach and a $3,000 check to Rick Cyburt as the "profit" from their investment.

Eugene Harrow referred Josef Green and John Marino to Mr. Walker. Mr. Green was told that his money would remain in a secured account. He invested $500,000 in the Equity Action account at Stires & Co. Mr. Marino deposited $100,000 into the Equity Action account at Stires & Co.

Mr. Walker wired $500,000 from the Equity Action account at Stires & Co. to the Equity Action account in Pennsylvania. Mr. Howard, Mr. Robinson, and Mr. Walker agreed that Mr. Walker would wire transfer $420,000 to Mr. Howard's St. Louis account. Later, Mr. Howard wired $155,000 to the California MTL account.

After trial, the jury found both defendants guilty of the charges in the indictments. The jury found, in effect, that defendants' representations were false. They had no authority to sell GICs on behalf of any European insurance company or anybody else, and they had no intention of paying over to investors profits in the

-6-

amounts promised.  The District Court sentenced Mr. Robinson to 87 months (7 years and three months) of incarceration and three years of supervised release.  Mr. Howard received 120 months imprisonment (10 years) and three years of supervised release. We discuss each defendant's assignments of error in turn.

## II.

### A.

First, Mr. Robinson contends that the Court erred in sustaining the government's request that he receive an aggravating-role enhancement as an organizer or leader of criminal activity pursuant to U.S.S.G. § 3B1.1(a).  Mr. Robinson argues that the key determinations under U.S.S.G. § 3B1.1 are control and organization, and that he did not control or organize the acquisition of funding for the GICs.  We disagree.

In determining a defendant's level of participation in criminal activity, the trial court looks at the offense of conviction and any relevant conduct, including the defendant's participation in all aspects of the scheme.  See United States v. Hanley, 190 F.3d 1017, 1034 (9th Cir. 1999) (holding that the district court did not err in considering defendant's role in the entire wire-fraud scheme in applying a four-level increase for his role in a money-laundering scheme); United States v. Coon, 187 F.3d 888, 899 (8th Cir. 1999), cert. denied, 120 S. Ct. 1417 (2000) (holding that the court should consider the overall conspiracy and all its relevant conduct in applying U.S.S.G. § 3B1.1 to a RICO case).  A court of appeals will reverse a trial court's determination of a defendant's role in an offense only for clear error.  United States v. Dijan, 37 F.3d 398, 403 (8th Cir. 1994), cert. denied, 514 U.S. 1044 (1995).

There is sufficient evidence in the record to show that Mr. Robinson had a controlling role in the acquisition of funds for the investments in GICs.  He solicited investments from Patrick Mitchell and Steve Cameron.  He entered into an agreement

with Bushmills Investment, LTD which led to the Paik investment. He opened an account in the name of MTL with Stires & Co. into which he directed Mr. Walker to have the investors deposit their money.

Moreover, "[w]e define the term 'organizer or leader' broadly." United States v. Grady, 972 F.2d 889 (8th Cir. 1992) (per curiam). A close link to the source of the product which is the underlying basis of the criminal activity is evidence that a defendant is an organizer or leader. See id. (holding defendant's "sole access to the money orders, which were the essential ingredient of the crime," was sufficient to make him an organizer or leader."); United States v. Williams, 902 F.2d 675, 678 (8th Cir. 1990) (holding defendant's "presence and control over the principal instrumentality of this criminal scheme" was sufficient to make him a leader or organizer). Decision-making authority is also strong evidence that a defendant is an organizer or leader. Dijan, 37 F.3d at 403-04.

Here, the facts bear witness to Mr. Robinson's decision-making authority and his self-proclaimed "close link" to the scheme's source. Mr. Robinson ordered Gene Krinn to give the cashier's check to Joel Jordan and Kenneth Mitchell. He provided information on the source of GICs for the Stires & Co. marketing brochure. He opened an MTL account with Stires & Co. He contacted Mr. Walker and directed him to have investors deposit their money into the MTL account at Stires & Co. He sent letters to Mr. Walker stating that profits from the GIC transactions would be deposited into the Equity Action account, and that Mr. Walker was responsible for making payments to his investors. Mr. Robinson, along with Mr. Howard and Mr. Walker, agreed to wire funds from the Equity Action account in Pennsylvania to Mr. Howard's St. Louis account. Furthermore, Mr. Robinson's "close link" manifests itself through his representations to Mr. Mitchell and Mr. Cameron that he had the relationship with the issuing insurance companies necessary to purchase GICs. We hold that the District Court's determination that Mr. Robinson was a leader or organizer was not clearly erroneous.

-8-

Next, Mr. Robinson contends that the Court erred in admitting evidence that Zurich American filed suit against him.  In May and June of 1993, an attorney for Zurich American Insurance Company wrote Mr. Robinson and demanded proof of his authority to represent Zurich American in the trade of GICs.  Mr. Robinson stated that he thought he had implied authority through an unnamed European insurance syndicate.  Zurich American filed a civil suit which was settled with Mr. Robinson agreeing not to claim that he represented Zurich American in the trade of GICs.  Mr. Robinson argues that this evidence should have been excluded under Rule 404(b) of the Federal Rules of Evidence.  According to Mr. Robinson the evidence was not probative but highly prejudicial and inflammatory.  We disagree.

Under Rule 404(b) of the Federal Rules of Evidence, evidence of prior bad acts, though inadmissible to show that a person acted in conformity with the prior acts, may be admissible for other purposes, such as proof of motive, opportunity, intent, and absence of mistake or accident.  Fed. R. Evid. 404(b).  Such evidence is admissible if it is " '(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the [event at issue].' "  Berry v. Oswalt, 143 F.3d 1127, 1132 (8th Cir. 1998) (quoting United States v. Aranda, 963 F.2d 211, 215 (8th Cir.1992)).

An appellate court reviews a district court's evidentiary decisions for abuse of discretion.  United States v. Mosby, 101 F.3d 1278, 1282 (8th Cir. 1996), cert. denied, 520 U.S. 1254 (1997).  This Court "will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts."  United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998), cert.  denied, 525 U.S. 1169 (1999).

The investments alleged in the indictment occurred after Mr. Robinson settled with Zurich American.  The knowledge possessed by Mr. Robinson when he (or agents of MTL) made representations to the investors involved in the indictment is highly

probative. Evidence of Zurich American's suit against Mr. Robinson and MTL established that Mr. Robinson was on notice that he did not have Zurich American's permission to claim that he represented it in the sale and trade of GICs. His settlement of the suit was an admission that he had no such authority. We see no abuse of discretion in the District Court's determination that the probative value of this evidence substantially outweighed any prejudicial effect. See United States v. Derring, 592 F.2d 1003, 1007 (8th Cir.1979) (holding the Court does "not reweigh the value of the material against its potential for harm to the defendant, but determines only whether the district judge abused his discretion in admitting it").

Lastly, Mr. Robinson contends that the Court erred in increasing his offense level by 11 levels. According to U.S.S.G. § 2F1.1(b)(1) ". . . If the loss exceeded $2,000, increase the offense level as follows: . . . (L) More than $800,000 add 11." However, Mr. Robinson argues that the loss was more than $500,000 and less than $800,000 so that the increase would be ten under U.S.S.G. § 2F1.1(b)(1)(K). Mr. Robinson asserts that the total loss resulting from the indicted offenses was $720,000, and that he should not be charged with the losses from the Iowa investors, which totaled $370,000, since these losses were not charged in the indictment. We disagree.

A district court's determination of whether particular acts fall within the scope of relevant conduct under U.S.S.G. § 1B1.3 is a factual determination subject to review for clear error. United States v. Plumley, 207 F.3d 1086, 1091(8th Cir. 2000). "[T]he focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator." U.S.S.G. § 1B1.3, comment (n. 1); see also U.S.S.G. § 1B1.3, comment (nn. 9 and 10).

Mr. Robinson's actions in Iowa "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Mr. Robinson told Mr. Mitchell and Mr. Cameron, both Iowa investors, that they could

pool their money to "trigger a line of credit" to purchase the GICs, which would then be resold at a profit. This claim was identical to the ones made by Mr. Howard, Mr. Walker, and Mr. Redelico to the investors involved in the indicted offenses.

What is more, Mr. Robinson's actions in Iowa and the criminal activity in the indictment involve the same *modus operandi*. Either Mr. Robinson, Mr. Howard, or Mr. Walker was responsible for the withdrawal and wire transfer of investor funds to unauthorized accounts. Both in Iowa and in the offenses charged here, either Mr. Robinson or Mr. Howard secured the services of well-respected and unsuspecting businesses such as Bryton and Stires & Co. to aid in their scheme. The Court's determination that Mr. Robinson's activities in Iowa were relevant conduct under U.S.S.G. § 2F1.1 and should be added to the total loss resulting from the criminal activity alleged in the indictment was not clearly erroneous.[3]

## B.

Mr. Howard first claims that the Court erred in denying his motion for judgment of acquittal. Mr. Howard argues that there was insufficient evidence to show he knowingly participated in a fraudulent scheme or that he participated in money laundering or in a scheme to wire transfer money in excess of $5,000 knowing that the sums were obtained by fraud. We disagree.

In reviewing the denial of a motion for acquittal on the ground of insufficiency of the evidence, we review the evidence in the light most favorable to the verdict, and reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Whitehead, 176 F.3d 1030, 1041 (8th Cir. 1999).

---

[3]Mr. Robinson argues that the $8,000 returned to Mr. Perhach and Mr. Cyburt should not be included in the total loss. Even so, the subtraction of these recovered amounts fails to affect Mr. Robinson's offense level.

" 'The government is given the benefit of any reasonable inferences drawn from the evidence.' " United States v. Garfinkel, 29 F.3d 1253, 1257 (8th Cir. 1994) (quoting United States v. Patterson, 886 F.2d 217, 218 (8th Cir.1989)). The essential elements of a crime may be proved by circumstantial evidence. Holland v. United States, 348 U.S. 121, 140 (1954); United States v. Valverde, 846 F.2d 513, 515 (8th Cir. 1988).

There is sufficient evidence in the record upon which a reasonable jury could have found Mr. Howard guilty beyond a reasonable doubt. Mr. Howard told David Hollander that his $70,000 investment would be used to "trigger a line of credit" which would be used to buy and sell GICs. This was the same claim made by Mr. Robinson to Mr. Mitchell and Mr. Cameron. It was the same claim made by Mr. Redelico to Messrs. Cyburt, Perhach, and Kavanaugh, and it was the same claim made by Mr. Walker to Josef Green.

There is also evidence that Mr. Howard knew that Mr. Walker would procure other investors. Mr. Howard provided a form contract to Mr. Walker which stated that investors should deposit their money into the Greystone account. Mr. Howard instructed Mr. Walker to add language to the investment agreements stating that "100 %" of the investor's money would stay in a secured account for the "duration," and that only the investors would have access to the account.

Furthermore, Mr. Howard knew that the accounts from which he had money transferred contained investor money. Mr. Howard caused Mr. Pohlman to wire money from the Greystone account to unauthorized accounts in St. Louis after the Mitchell and Cameron deposits. Mr. Robinson and Mr. Howard instructed Mr. Walker to have the investors deposit money into the MTL account at Stires & Co. Subsequently, Mr. Howard received several wire transfers of money from the MTL account at Stires & Co. to his account in St. Louis. On several occasions Mr. Howard received money from investor accounts and then wired money from his St. Louis account to an MTL

account in California.  We hold that the District Court did not err in denying Mr. Howard's motion for judgment of acquittal.

Second, Mr. Howard claims that the Court improperly determined that he was subject to a four-level enhancement pursuant to U.S.S.G. § 3B1.1 for having an aggravating role in the offense.  At sentencing, Mr. Howard conceded that if the District Court found that the scheme was "otherwise extensive that there would be an enhancement."  Howard Sentencing Hearing Transcript at 11.  In reply, the District Court stated, "in the Court's mind . . . this operation was quite extensive . . .  So that objection is overruled."  Id.  Below, Mr. Howard did not base his objection to the enhancement on the Court's finding that he was an leader or organizer, but on whether the scheme was "otherwise extensive."  Therefore, we do not reach the merits of Mr. Howard's claim that he was not a leader or organizer because it is raised for the first time on appeal.  See Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 734 (8th Cir. 1993).

Lastly, Mr. Howard claims that the Court erred in finding the amount of loss with which he was associated pursuant to § 2F1.1(b)(1)(L).  In arriving at the total monetary loss of $1,090,000 the Court added the losses suffered by both the Iowa investors and the investors in the indicted criminal activity.  Mr. Howard argues that the losses attributed to him were not reasonably foreseeable acts by others that he would have known about or anticipated.  We find no merit in this contention.

A district court's determination of whether particular acts fall within the scope of the relevant conduct sentencing guideline, U.S.S.G. § 1B1.3, is subject to review for clear error.  United States v. Sheahan, 31 F.3d 595, 599 (8th Cir. 1994).  The evidence suggests that the criminal activity in Iowa, like that charged here, was a joint effort by Mr. Howard and Mr. Robinson.  Mr. Howard solicited Mr. Hollander using the same representations Mr. Robinson made to the Iowa investors.  Moreover, soon after Mr. Robinson's solicitation prompted Steve Cameron and Patrick Mitchell to deposit money

into the Greystone account, Mr. Howard arranged a wire transfer from the Greystone account to his friend's personal account.

Likewise, Mr. Howard knew that Mr. Walker would recruit other investors. Mr. Howard faxed a sample contract to Mr. Walker instructing potential investors into which account to deposit their money. He told Mr. Walker what terms should appear in the contract. Morever, Mr. Howard knew that the accounts from which he arranged transfers contained investor funds. Thus, the losses resulting from the indicted criminal activity as well as that taking place in Iowa were reasonably foreseeable to Mr. Howard, and the Court committed no clear error in attributing those losses to him.[4]

The judgments are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

_____

[4]Mr. Howard also argues that Mr. Hollander's loss of $70,000 should not be included in the total loss because Mr. Hollander recovered his investment in a separate suit. However, even if $70,000 were subtracted from the total loss attributed to Mr. Howard, there would be no change in his resulting offense level. Moreover, Mr. Howard's motions asking that certain investigative reports and material be turned over to him, and that his appointed counsel be removed from the case, are denied.