# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2518

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Rigoberto Antillon-Castillo, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 13, 2002

Filed:  February 24, 2003

_____

Before MORRIS SHEPPARD ARNOLD, RILEY, SMITH, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Rigoberto Antillon-Castillo pleaded guilty to one count of conspiracy to distribute 500 grams or more of methamphetamine and one count of conspiracy to distribute 5 kilograms or more of cocaine.  See 21 U.S.C. §§ 841(a)(1), 846.  He appeals his sentence, contending that the sentencing court[1] failed to make adequate findings to support the imposition of a 4-level upward adjustment to his offense level for being a leader or organizer.  See U.S.S.G. § 3B1.1(a).  We affirm.

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

Under § 3B1.1(a), a 4-level increase must be imposed "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Mr. Antillon-Castillo's argues that before imposing the adjustment the sentencing court was required to find that the drug distribution conspiracy involved "five or more participants or was otherwise extensive." We conclude, however, that here such a finding was unnecessary because the defendant conceded at his change-of-plea hearing that he was part of a conspiracy to transport drugs that involved himself, at least two other people in Amarillo, Texas, and at least two people in Kansas City, Missouri.

Mr. Antillon-Castillo also contends that the sentencing court should have made additional findings to support its conclusion that he acted as a leader of the conspiracy. We note that at his change-of-plea hearing, Mr. Antillon-Castillo acknowledged that he "made arrangements" with at least four other people to transport drugs from Amarillo to Kansas City, that more than one trip was involved, and that this group transported more than 500 grams of methamphetamine and more than 5 kilograms of cocaine. Mr. Antillon-Castillo also agreed that he "coordinat[ed]" these "arrangements" and traveled from Amarillo to Kansas City to "monitor" the shipments.

In addition, at sentencing the government offered evidence from a detective who had interviewed about fifty people in the course of investigating the conspiracy and had obtained other evidence. He testified that the four individuals who Mr. Antillon-Castillo admitted were part of the conspiracy (including his wife and his younger brother) took orders from the defendant, as did several others. One of them, Debra Haynes, told the detective that she was at an organizational meeting in which Mr. Antillon-Castillo and his wife announced that they would be handling everything: They explained how often the so-called "load vehicles" (vehicles with a secret compartment for drugs and drug proceeds) would arrive from Amarillo and how frequently payments for the drugs should be made to Mr. Antillon-Castillo.

-2-

Ms. Haynes stated that the defendant would come to Kansas City when large shipments of drugs were due to arrive. The detective testified that Mr. Antillon-Castillo and his wife had a business in Amarillo, Low Rider Customs, which was used in the conspiracy for money laundering. Also, Mr. Antillon-Castillo sent others to Kansas City to collect debts owed to him for the drugs, and they arrived wearing shirts with a Low Rider logo and driving a company car. A car taken in Kansas City for a drug debt, moreover, was found at the defendant's place of business.

The government offered evidence that another individual supplied drugs to Mr. Antillon-Castillo and collected money from him, and the defendant argued that he was a "middleman" rather than a "leader." After hearing the evidence, the sentencing court found that Mr. Antillon-Castillo was "involved in significant decision making" and concluded that he was a "leader" and "clearly more than a manager." The term "leader" is broadly defined, *see United States v. Zimmer*, 299 F.3d 710, 719 (8th Cir. 2002), *cert. denied*, 71 U.S.L.W. 3474 (Jan. 13, 2003), and "[d]ecision-making authority is ... strong evidence that a defendant is an organizer or leader," *United States v. Howard*, 235 F.3d 366, 371 (8th Cir. 2000). Although the sentencing court agreed that there might be people above Mr. Antillon-Castillo, it found that this was a "big conspiracy" involving "a lot of drugs and a lot of money" and noted that a conspiracy may have more than one leader. A defendant need not be *the* leader of an organization or lead " 'all of the other participants in the activity' " in order to be a leader under § 3B1.1(a). *See Zimmer*, 299 F. 3d at 719 (quoting *United States v. Bahena*, 223 F.3d 797, 804 (8th Cir. 2000)); U.S.S.G. § 3B1.1 comment. n.4.

Based on all of the circumstances, we conclude that the sentencing court made sufficient findings to support the upward adjustment, which was supported by the record. *Cf. United States v. Ortiz*, 125 F.3d 630, 633-34 (8th Cir. 1997), *cert. denied*, 522 U.S. 1132 (1998); *United States v. Grajales-Montoya*, 117 F.3d 356, 365-66 (8th

Cir.1997), *cert. denied*, 522 U.S. 983, 1007 (1997). Accordingly, we affirm Mr. Antillon-Castillo's sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.