# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3778

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Joe Thomas Cowling, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 17, 2011
Filed: August 8, 2011

_____

Before BYE and MELLOY, Circuit Judges, and SMITH CAMP,[1] District Judge.

_____

SMITH CAMP, District Judge.

A jury found Joe Thomas Cowling, Jr., guilty of two counts of conspiracy to possess, sell, or dispose of stolen firearms, one count of possessing firearms as a felon, and one count of possessing a stolen firearm. The district court[2] sentenced Cowling to a total term of sixty-three (63) months imprisonment. Cowling appeals,

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

arguing that his conviction should be reversed because it was based on evidence obtained pursuant to a constitutionally inadequate search warrant. He also argues that at trial the district court impermissibly limited cross-examination of government witnesses and erred in admitting testimony by co-conspirators and evidence of prior bad acts. Finally, Cowling contends that there was insufficient evidence to sustain his conviction. We affirm.

# I. BACKGROUND

## A. Facts

On March 12, 2009, Wayne County, Iowa, Deputy Sheriff Tyler Moore interviewed a Confidential Informant ("CI") after discovering an illegal sawed off shotgun at the CI's residence (hereinafter "Interview #1"). The CI agreed to provide Deputy Moore with information about three burglaries. The first burglary took place on February 15, 2009, at the residence of Steve Keyner; the second burglary took place on February 27, 2009, at the residence of Robert Boyce; the third burglary took place on no specific date, at Iowa Select Farms ("ISF"). At both residential burglaries, the items stolen included firearms, ammunition, and other property. At the ISF burglary, the items stolen included various fuel tanks and diesel fuel. The CI denied any involvement in the burglaries, but said he allowed his friends to store some of the stolen items, including some firearms, at his apartment.

On March 18, 2009, Deputy Moore interviewed the CI a second time, in the presence of the CI's attorney (hereinafter "Interview #2"). During Interview #2, Deputy Moore told the CI that information uncovered by police indicated the information provided by the CI during Interview #1 was false. The CI again denied his own involvement in the burglaries, however, he did tell Deputy Moore that he knew who committed the burglaries and what had been stolen. The CI stated that Tony Allen, Devin Draper, and Joe Snook committed the Keyner burglary, and the

Boyce burglary was committed by Allen, Snook, and Jason Bottjen. The CI also told Deputy Moore that Snook told him it was Cowling's idea to burglarize the Boyce residence and that Cowling wanted a .22 Ruger from the Boyce residence in exchange for coordinating the burglary.

Following Interview #2, Deputy Moore used information the CI provided to locate a stolen ISF fuel tank on Cowling's property. Deputy Moore also confirmed that the firearms described by the CI matched those reported stolen from the Boyce residence, and that a vehicle registered to Snook's grandfather and mother matched the CI's description of the vehicle Snook drove.

Thereafter, Deputy Moore applied for a search warrant for Cowling's residence. As part of the application, Deputy Moore completed an affidavit that summarized Interview #2, stating that Cowling was in possession of a .22 Ruger from the Boyce residence and possibly another shotgun. Deputy Moore failed to include in the affidavit the fact that the CI had provided false information during Interview #1. County Attorney Alan Wilson signed the warrant application, and checked a box indicating that the "informant has not given false information in the past." A Wayne County Magistrate approved the search warrant application. Subsequently, on March 18, 2009, Deputy Moore and other law enforcement officers executed the warrant, searched Cowling's residence, and seized a stockpile[3] of firearms.

## B. Prior Proceedings

In September 2009, a federal grand jury returned a ten-count indictment against Cowling and four other individuals. As relevant here, Counts 1 and 6 charged Cowling with two separate conspiracies to possess stolen firearms, in violation of 18

---

[3]Officers seized a total of seventy-five (75) firearms and approximately 58,000 rounds of ammunition from Cowling's residence.

U.S.C. § 371; Count 4 charged Cowling with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1); and Count 8 charged Cowling with possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). Cowling filed a motion to suppress evidence of the firearms seized from his residence during the execution of the search warrant on March 18, 2009. Following a hearing, the district court denied the motion.

A jury trial ensued. The government called several witness including the CI and Snook. Snook testified to stealing a variety of fuel tanks, diesel fuel, and other farm equipment from ISF. Snook and the CI both testified that Cowling purchased a stolen ISF fuel tank from them and they had placed the stolen tank in a shed on Cowling's property. In addition, Snook and the CI both testified that Cowling purchased stolen diesel fuel from them for $1 per gallon.

The jury found Cowling guilty of Counts 1, 4, 6, and 8. The district court sentenced Cowling to sixty-three (63) months imprisonment on Counts 4 and 8 and sixty (60) months imprisonment on Counts 1 and 6, all counts to be served concurrently. Cowling filed a timely appeal challenging the district court's denial of his motion to suppress, several evidentiary rulings at trial, and the sufficiency of the evidence supporting his conviction on Counts 1, 4, and 6.

## II. DISCUSSION

### A.    Motion to Suppress

Cowling appeals the district court's denial of his motion to suppress the evidence of firearms seized from his residence during the execution of a duly issued search warrant on March 18, 2009. First, Cowling argues that under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the evidence must

be suppressed because the affidavit in support of the warrant contained false and misleading statements that were material to the magistrate's determination of probable cause.[4] In support of his argument, Cowling points to the fact that the warrant application indicated that the "informant has not given false information in the past" when Deputy Moore knew the CI had provided false information during Interview #1. Second, Cowling contends that the warrant failed to establish a nexus between the thing sought (guns) and the place to be searched (Cowling's residence). The crux of this argument is that the only thing linking the guns to Cowling's residence was a single statement by the CI.

To prevail on a *Franks* challenge, a defendant must show the following: (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and (2) "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010), *cert. denied,* 131 S.Ct. 1605 (2011).

The district court found that the warrant application's representation that the CI had not given false information in the past was made with reckless disregard for the truth. Thus, the first element of the *Franks* inquiry was satisfied. The district court further found, however, that even including the fact that the CI had given false information during Interview #1, the affidavit nevertheless established probable cause to search Cowling's residence. We review the district court's probable cause determination *de novo*. *United States v. Vanover*, 630 F.3d 1108, 1113-14 (8th Cir. 2011).

---

[4]It should be noted that a *Franks* violation cannot be excused under the *Leon* good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 914 & n. 12 (1984).

An affidavit establishes probable cause if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A probable cause determination is based on the totality of the circumstances. *United States v. Morales*, 923 F.2d 621, 623-24 (8th Cir. 1991). "When information supplied by an informant forms the basis for probable cause in a warrant, the 'core question in assessing probable cause . . . is whether the information is reliable.'" *United States v. Nieman*, 520 F.3d 834, 839-40 (8th Cir. 2008) (quoting *United States v. Williams,* 10 F.3d 590, 593 (8th Cir. 1993)). In assessing such reliability, this Court considers several factors, such as (1) whether officers conducted a face-to-face interview with the informant, (2) the level of detail included in the information provided to law enforcement by the informant, and (3) whether law enforcement independently corroborated any of the information provided by the informant. *United States v. Robertson*, 39 F.3d 891, 893-94 (8th Cir. 1994) (interviewing an informant face to face "gives greater weight to an officer's decision to rely on that information," and "there is an inherent indicia of reliability in 'the richness and detail of a first-hand observation.'") (quoting *United States v. Jackson,* 898 F.2d 79, 81 (8th Cir. 1990)); *United States v. Stropes*, 387 F.3d 766, 772-73 (8th Cir. 2004) (noting corroboration of information is a relevant factor in establishing probable cause).

We agree with the district court's conclusion that probable cause to search Cowling's residence still would have existed even if the affidavit had included the fact that the CI had given false information during Interview #1. First, Deputy Moore interviewed the CI in person on multiple occasions. Second, during his face-to-face interviews with police, the CI provided detailed descriptions of both the stolen items and their location. Third, officers corroborated the information provided by the CI during Interview #2 by using the information to locate a stolen trailer and fuel tank

-6-

on Cowling's property. Considering the totality of the circumstances, even if the magistrate judge had known that the CI gave false information in the past, there would have remained "a fair probability" that Cowling was in possession of stolen firearms.

Cowling's argument that evidence seized from his residence should be suppressed because the warrant application failed to establish a nexus between the evidence sought and the place to be searched is also without merit. Because the warrant affidavit established probable cause that Cowling possessed stolen firearms, it follows that probable cause existed to search Cowling's residence, because people "generally keep [firearms] at home or on their persons." *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975); *see also United States v. Anderson*, 851 F.2d 727 (4th Cir. 1988) ("[i]t was reasonable for the magistrate to believe that the defendant's gun and the silencer would be found in his residence. . . . even though the affidavit contained no facts that the weapons were located in the defendant's trailer . . . .").

## B.    Evidentiary Rulings

Cowling appeals three evidentiary rulings made at his trial: (1) the district court's limitation on cross-examination of government witnesses; (2) the district court's admission of testimony regarding the ISF burglaries; and (3) the district court's admission of testimony regarding his prior bad acts. We address each in turn.

## 1.    Cross-Examination

Cowling challenges the district court's decisions to limit his cross-examination of Deputy Moore.[5]  He contends that the district court's decisions on this issue were erroneous under the rules of evidence and violated his rights under the Confrontation Clause of the Sixth Amendment.  "We review 'evidentiary rulings regarding the scope of cross-examination for an abuse of discretion, except where the Sixth Amendment confrontation clause is implicated, and then our review is de novo.'" *United States v. Cervantes*, – F.3d –, 2011 WL 2936364, at * 4 (8th Cir. July 22, 2011) (quoting *United States v. Jewell*, 614 F.3d 911, 920 (8th Cir. 2010)).

At trial, in an attempt to impeach Deputy Moore's prior testimony, Cowling's counsel placed transcripts of witness interviews in front of Deputy Moore and began reading from the transcripts.  The government objected because the transcripts were not in evidence, and counsel then offered the transcripts as evidence.  The government objected on hearsay grounds, and the district court sustained the objection.  The district court explained: "These transcripts can certainly be used to refresh the deputy's recollection, but to actually read from the transcripts when they're not in evidence I think is improper, and so you're certainly entitled to use them to refresh the deputy's recollection . . . ."

Next, defense counsel showed Deputy Moore transcripts of his prior deposition testimony in a related state civil matter.  Counsel directed Deputy Moore's attention to various lines in the deposition, read from those lines, and then asked Deputy Moore

---

[5]In his brief Cowling also challenges the district court's rulings limiting his cross-examination of co-defendant Snook, however, the only objection made by the government during the cross-examination of Snook was in regard to a compound question.  As such, we summarily conclude the district court did not impermissibly limit Cowling's opportunity to cross-examine Snook.

if the deposition transcript refreshed his recollection. The government objected on the basis that counsel had not established that Deputy Moore needed his recollection refreshed. The district court sustained the objection and explained: "You can take this guy with leading questions and you can say, isn't it true that under oath you have previously said this? And then if he says, no . . . then you can impeach him with it . . . but you can't just read from stuff that's not in evidence."

Evidence of prior inconsistent statements is admissible under Rule 613(b) of the Federal Rules of Evidence, however, "our case law adds a restriction not explicitly included in Rule 613 itself: Extrinsic evidence of a collateral matter is not admissible." *United States v. Carter*, 410 F.3d 1017, 1022 (8th Cir. 2005). Similarly, "while the Confrontation Clause generally 'guarantees a defendant's right to cross-examine witnesses . . .' the right to cross-examine a witness is not without limitation . . . ." *United States v. Ragland*, 555 F.3d 706, 712 (8th Cir. 2009) (quoting *United States v. Drapeau,* 414 F.3d 869, 875 (8th Cir. 2005)). Stated differently, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (a district court retains significant discretion in imposing reasonable limits on cross-examination).

In this case, the district court allowed inquiry into the relevant subject matters during the cross-examination of Deputy Moore. Cowling's counsel was permitted to question Deputy Moore regarding his previous interviews with witnesses and deposition testimony. Also, counsel was permitted to use the transcripts to refresh Deputy Moore's recollection. To the extent Deputy Moore's testimony was contrary to the statements contained in the transcripts, the district court provided defense counsel with guidance on how to impeach Deputy Moore with the transcripts.

Although counsel may not have been permitted to use the transcripts in the way he wanted, he was provided the *opportunity* to use the transcripts and that is all that is required under the Confrontation Clause.  Insofar as Cowling relies on the fact that his counsel was not permitted to impeach Deputy Moore regarding whether he "liked" Snook, we conclude that whether Deputy Moore "liked" Snook was not pertinent to "the substantive issues of the trial."  *Carter*, 410 F.3d at 1023.  Accordingly, the district court's limitation on the cross-examination of Deputy Moore was neither an abuse of discretion nor a violation of the Confrontation Clause of the Sixth Amendment.

## 2. Co-conspirator Statements

Cowling also challenges the district court's rulings, admitting testimony about the Boyce and Keynar burglaries, under Rule 801(d)(2)(E) of the Federal Rules of Evidence.  We review the evidentiary rulings of the district court for abuse of discretion[6] "and will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict."  *United States v. Elbert* , 561 F.3d 771, 775 (8th Cir.2009) (quoting *United States v. Ballew,* 40 F.3d 936, 941 (8th Cir. 1994)). "We will not reverse if the error was harmless."  *United States v. Missouri*, 535 F.3d 844, 848 (8th Cir.2008).

In order to admit a statement under Rule 801(d)(2)(E), the district court must "find by a preponderance of the evidence that a conspiracy existed involving the declarant and the party against whom the statement is offered and that the statements were made by the declarant in the course of and in furtherance of the conspiracy."

---

[6]Cowling preserved this evidentiary issue for appellate review by objecting to the admission of the testimony in limine and at trial.

*United States v. Spotted Elk*, 548 F.3d 641, 661 (8th Cir. 2008) (citing *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). In *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978), this Court set forth the procedure appropriate when a party offers testimony that would be hearsay if it did not meet the requirements of Rule 801(d)(2)(E). "At the conclusion of the evidence, the district court must then make an explicit finding as to whether the proponent established the foundational elements . . . ." *Spotted Elk*, 548 F.3d at 661.

Here, at the close of evidence, the district court made the explicit findings required by *Bell*. At that time, the court found that the government had established that there was a conspiracy. The court then reviewed the foundational elements of Rule 801(d)(2)(E) and declared that the government had established each of the required elements. The court also stated, "To the extent that there was testimony elicited that I felt did not comply or was borderline, I simply sustained the objection so that the testimony did not come in."

Cowling argues that because the search of his residence yielded no physical evidence linking him to the Boyce burglary, there was insufficient evidence to support the district court's *Bell* finding in regard to the Boyce burglary conspiracy. In addition, Cowling argues that despite the discovery of firearms stolen from the Keyner residence in his home, there was insufficient evidence to support the district court's *Bell* finding in regard to the Keyner burglary conspiracy. We disagree.

After a full review of the record we conclude that the district court did not abuse its discretion by admitting testimony concerning the Boyce and Keyner burglaries under Rule 801(d)(2)(E). At trial, the government presented testimonial evidence that Cowling told Snook about certain firearms located in the Boyce residence, including a .22 caliber Ruger. Deputy Moore confirmed that a .22 caliber pistol was among the firearms stolen from the Boyce residence. On these grounds

-11-

alone, there was sufficient evidence to admit testimony concerning the Boyce burglary under Rule 801(d)(2)(E). In regard to the Keyner burglary, the search of Cowling's residence revealed two guns that independently linked Cowling to the Keyner burglary. Accordingly, Cowling has not shown an abuse of discretion by the district court in admitting statements concerning the Keyner burglary under Rule 801(d)(2)(E).

### 3. Prior Bad Acts

Cowling also challenges the district court's admission of evidence of the ISF burglaries under Federal Rule of Evidence 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b).

The rule is one of inclusion, "such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." *United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006). We review evidentiary rulings of the district court for abuse of discretion, and will reverse a district court's decision to admit evidence under 404(b) only if such evidence "'had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" *United States v. Thomas*, 398 F.3d 1058, 1062 (8th Cir.2005) (quoting *United States v. Howard,* 235 F.3d 366, 372 (8th Cir. 2000). As relevant here, evidence of other crimes is admissible under Rule 404(b) if it is "(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance

of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value." *Id.*

Cowling argues that the evidence regarding equipment theft from ISF was irrelevant and the potential unfair prejudice substantially outweighed the probative value of the evidence. In support, Cowling points to the fact that the government does not contend that Cowling himself stole the equipment from ISF. Cowling's argument is unpersuasive. First, evidence of past crimes can be probative of a defendant's intent to commit a similar act. *See United States v. Turner*, 583 F.3d 1062, 1066 (8th Cir.2009), *cert. denied,* 130 S.Ct. 1928 (2010).

Here, the prior crime and the currently charged crimes both involved a conspiracy to possess stolen goods. The crimes were similar, and the facts of the prior crime were probative. Given the probative value of the evidence, it unlikely that the evidence "'had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" *Thomas*, 398 F.3d at 1062 (quoting *United States v. Howard,* 235 F.3d 366, 372 (8th Cir. 2000)). Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted. *See United States v. Hessman*, 493 F.3d 977, 983 (8th Cir.2007) (limiting instruction minimizes the danger of unfair prejudice to the defendant). Therefore, the district court did not abuse its discretion in admitting the challenged evidence.

## C. Sufficiency of Evidence

Cowling also contends that the district court erred by submitting Count 1 (conspiracy), Count 6 (conspiracy), and Count 4 (felon in possession) to the jury. Generally, a claim of insufficient evidence in a criminal case is reviewed *de novo*, by examining the evidence in the light most favorable to the verdict. *United States v. Gentry*, 555 F.3d 659, 664 (8th Cir. 2009).

In regard to Counts 1 and 6, Cowling argues that the government failed to produce sufficient evidence to establish either the existence of or his participation in a conspiracy. Specifically, Cowling contends that the testimony of co-conspirators was the only evidence the government presented that linked him to the conspiracies surrounding the Keyner and Boyce burglaries and, that standing alone, this testimony was insufficient to support his conviction. Cowling cites *Arnott v. United States*, 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed 2d 325 (1983), as support for his position.

Cowling's argument is fatally flawed because the "case" that he cites as support for his argument is merely the denial of a petition for writ of certiorari. Further, the portion of the opinion cited to by Cowling is Justice White's dissent articulating the evidentiary standard for admitting evidence under Rule 801(d)(2)(E) of the Federal Rules of Evidence. *Arnott*, 464 U.S. at 948-49 (citing *United State v. Bell*, 573 F.2d 1040, 1043-44 (8th Cir. 1978)). Having already discussed this issue, *supra* at Section II(B)(2), we find it unnecessary to restate our *Bell* analysis.

In regard to Count 4, Cowling argues that the government failed to provide sufficient evidence to prove that he knowingly and intentionally possessed the firearms seized from his residence, in violation of 18 U.S.C. § 922(g)(1). To obtain a conviction under 18 U.S.C. § 922(g)(1) the government must "prove beyond a reasonable doubt (1) [Cowling] previously had been convicted of a crime punishable by a term of imprisonment exceeding one year, (2) [Cowling] knowingly possessed a firearm, and (3) the firearm had been in or had affected interstate commerce." *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007). The only issue raised in this appeal is whether Cowling knowingly possessed a firearm.

The government could prove Cowling "knowingly possessed the firearm if he had actual or constructive possession of the firearm, and possession of the firearm could have been sole or joint." *United States v. Walker,* 393 F.3d 842, 846-47 (8th Cir. 2005). "Constructive possession of the firearm is established if a person has

-14-

ownership, dominion, or actual control over the firearm itself or has dominion over the premises where the firearm is located." *United States v. Urick,* 431 F.3d 300, 303 (8th Cir. 2005). Mere proximity, however, is insufficient to establish constructive possession. *Id*.

Here, the evidence clearly supports Cowling's conviction for felon in possession. First, police found a loaded revolver on the kitchen counter next to Cowling's keys and cell phone. From this the jury may have reasonably inferred that Cowling placed the revolver on the counter. In addition, other firearms were found in a dresser in the master bedroom, in the dining room, and in a hallway next to a downstairs bathroom. Moreover, when officers seized the guns at issue, Cowling told them that the guns were his and he would get them back.

## III. CONCLUSION

We affirm the district court's denial of Cowling's motion to suppress, its evidentiary rulings at trial, and its decision to submit Counts 1, 4, and 6 to the jury.

_____