# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3890

_____

United States of America,  *
                           *
            Appellee,      *
                           *    Appeal from the United States
      v.                   *    District Court for the
                           *    Western District of Missouri.
Joseph J. Johnson,         *
                           *
            Appellant.     *

_____

Submitted: September 11, 2001
Filed: February 1, 2002

_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Joseph J. Johnson appeals his drug conspiracy conviction and resulting sentence. We affirm the judgment of the district court.[1]

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

I.

On September 1, 1999, the grand jury indicted Joseph Johnson along with Larry Beal, Eugene Johnson (Joseph Johnson's nephew), Anthony Clemons, and Macia Jackson in a nine-count drug conspiracy indictment. Specifically, the indictment charged Joseph Johnson with participating in a conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846, and also charged him with one count of possession with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1). The remaining counts implicated Johnson's codefendants. Johnson and Beal proceeded to trial together.[2] We summarize the evidence presented at trial in the light most favorable to the jury's verdict.

Joseph Johnson was involved in a drug distribution conspiracy headed by Larry Beal in the Springfield, Missouri, area. Beal obtained his supply of cocaine in St. Louis and transported it to Springfield for distribution. Beal, Johnson, and their associates sometimes distributed cocaine in powder form and sometimes processed it into cocaine base for distribution. They often distributed drugs to coemployees and others at the live dock of Hudson Foods (now Willowbrook Foods) in Springfield, Missouri, where they worked.

Anthony Clemons worked with Beal and Johnson at Hudson Foods. Clemons began working there while he was participating in a prison job release program. After Clemons was released from the prison work program, he began to obtain controlled substances from Beal and Johnson. To sustain his own addiction, he eventually began dealing drugs for Beal. In exchange for his dealing activities, Beal gave

---

[2]Counts against the remaining defendants were separately resolved. Eugene Johnson and Anthony Clemons pleaded guilty, and the government dismissed the indictment against Macia Jackson in favor of allowing her to face state charges.

Clemons personal use amounts of the drug which Clemons could either use himself or sell. Beal instructed Clemons that he could obtain cocaine and cocaine base from Johnson when Beal was unavailable or when Beal did not want to be disturbed at home. Clemons described Beal as the "mastermind" of the conspiracy and Johnson as the "underhand" man. (Trial Tr. at 74.)

Tommy Dorsey similarly began working at Hudson Foods with Beal and Johnson while participating in a prison work release program. Dorsey testified that he obtained cocaine and cocaine base from Beal and Johnson. At first, he obtained drugs only for his own personal use, but at some point he also began distributing drugs to others for Beal. Dorsey saw both Beal and Johnson distribute cocaine to Hudson Foods employees and others out at the live dock where they worked. Beal would direct the flow of drugs in the conspiracy, but he also directed Dorsey to Johnson for his drug-related needs when Beal himself was unavailable. At trial, Dorsey characterized Beal as the leader of the conspiracy and Johnson as his righthand man or number one person.

The jury convicted Johnson on the conspiracy charge but acquitted him of possession with intent to distribute. The jury did not make a drug quantity finding. At sentencing, the district court attributed to Johnson the total quantity of cocaine base involved in this conspiracy, which the court found exceeded 150 grams but did not exceed 500 grams. This calculation yielded a base offense level of 34. The district court then imposed a two-level enhancement to this base offense level for Johnson's aggravating role in the offense, which when paired with his Criminal History Category of IV resulted in a guideline sentencing range of 262 to 327 months of imprisonment. All agreed, however, that the decision of the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), applied to this case. There, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Because the jury had

3

made no drug quantity finding, the district court sentenced Johnson to 240 months of imprisonment–the statutory maximum penalty for this offense without considering drug quantity. See 21 U.S.C. § 841(b)(1)(C); U.S. Sentencing Guidelines Manual § 5G1.1(a) (1998) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); see also United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir.) (holding that a sentence is proper as long as it is within the statutory range prescribed for the offense without regard to drug quantity), cert. denied, 531 U.S. 1026 (2000). Johnson appeals.

## II.

Johnson first contends that the trial court erred by refusing to give his requested defense instruction. The district court has broad discretion in formulating the jury instructions. United States v. Wright, 246 F.3d 1123, 1128 (8th Cir.), cert. denied, 122 S. Ct. 268 (2001). A defendant is entitled to a timely requested instruction on his theory of defense as long as it correctly states the law and is supported by the evidence. United States v. Fay, 668 F.2d 375, 377 (8th Cir. 1981). "A defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction." Wright, 246 F.3d at 1128 (internal quotations omitted). We review the instructions given as a whole and affirm if they fairly and adequately submitted the issues to the jury. Id.

Johnson sought to include the following as Instruction A:

Mere association between [sic] Larry Beal, Joseph Johnson, Anthony Clemons, Eugene Johnson and Macia Jackson is not sufficient to establish guilt beyond a reasonable doubt that each of the defendants knowingly and intentionally distributed cocaine base. Nor is mere

4

presence at the scene of alleged criminal acts sufficient to establish that the defendants knowingly and intentionally distributed cocaine base.

(Appellant's Add. at 10.)

The district court rejected this instruction, concluding that its content was redundant in light of Instruction 25, which stated in part as follows:

You should understand that merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person has joined in an agreement or understanding. A person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose of one, does not thereby become a member.

(Id. at 8.)

We find no abuse of discretion in the district court's refusal to give the jury Johnson's particularly worded instruction. While he contends that he sought a more detailed charge pertaining specifically to the evidence against him under the conspiracy count, we agree with the district court's conclusion that Johnson's requested instruction would have been redundant. The instructions given fairly and adequately submitted to the jury Johnson's theory of defense.

Johnson also challenges his sentence, arguing that the district court erred by enhancing his base offense level by two levels for his role in the offense. See USSG § 3B1.1(c). We review the district court's decision to assess a sentencing enhancement based upon a defendant's role in the offense for clear error, and the government has the burden to prove that such an increase is warranted. United States v. Encee, 256 F.3d 852, 854 (8th Cir. 2001). The Sentencing Guidelines provide three types of enhancements to the base offense level depending upon the defendant's aggravating role in the offense. United States v. Austin, 255 F.3d 593, 598 (8th Cir.

5

2001). A district court must impose a four-level increase to the base offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." USSG § 3B1.1(a). A three-level increase is required "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants." Id. § 3B1.1(b). Finally, the court must impose a two-level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in [the previous two sections]." Id. § 3B1.1(c).

"The Eighth Circuit has unequivocally held that a trial court's only options in cases involving a criminal activity with five or more participants are . . . a four-level enhancement under § 3B1.1(a), a three-level enhancement under § 3B1.1(b), or no enhancement at all (if the defendant played no aggravating role in the offense)." Austin, 255 F.3d at 598 (internal quotations and alterations omitted). In this case, the district court found that the number of individual participants involved in the offense was more than five. This finding is not clearly erroneous.

The district court also found that Johnson was "an organizer, leader, manager or supervisor pursuant to 3B1.1(c)." (Sent. Tr. at 18.) Section 3B1.1(c) imposes a two-level enhancement, but as indicated above, the imposition of a two-level enhancement is precluded here by the court's finding that the criminal activity involved more than five participants. Johnson is correct to argue that, having found that the crime involved more than five participants, the court's only options were to impose a four-level enhancement, a three-level enhancement, or no enhancement at all. However, while we agree that the imposition of a two-level enhancement after finding five or more participants was erroneous, reversal is not necessarily required in this instance because Johnson's sentence is already capped at the maximum sentence allowed by Apprendi. Thus, unless the finding that he was an organizer, leader, manager or supervisor is clearly erroneous thereby rendering Johnson ineligible for any role enhancement of any kind, the erroneous two-level enhancement

6

(as opposed to a three- or four-level enhancement) does not prejudice either the defendant or the government. It is only if Johnson is ineligible for an aggravated role in the offense adjustment of any kind that a remand would be necessary because if he were to receive no such enhancement, his offense level would be 34, Criminal History Category IV, with a sentencing range of 210 to 240 months (actually 210-262 from the Sentencing Table, but the top end of the range is capped by the statutory maximum of 240 months per Apprendi). See USSG § 5G1.1(c)(1); see also United States v. O'Hagan, 139 F.3d 641, 658 (8th Cir. 1998) (holding when it is not clear that the sentencing judge would have imposed the same sentence if a lower sentencing range would have been available, remand is required). We must therefore consider whether the court's finding that Johnson was an organizer, leader, manager or supervisor was clearly erroneous. For the reasons that follow, we conclude that it was not.

Johnson argues that his mere act of supplying distribution quantities for resale without proof of direction or control over the other participants' activities is insufficient to demonstrate that he was a manager or supervisor of the activity. We disagree with his characterization of the evidence. At sentencing, the government relied on the trial testimony to establish Johnson's role in the offense. Clemons and Dorsey testified that Johnson was Beal's number one man. They also characterized Johnson as Beal's "right hand man" or "underhand" man. They each said that Beal was the true leader of the conspiracy but that he instructed them to go to Johnson for their supply of crack or cocaine or with their questions whenever Beal was unavailable. An adjustment under § 3B1.1 may be warranted where the defendant "exercised management responsibility over the property, assets, or activities of a criminal organization," even if the defendant did not manage or supervise another participant. USSG § 3B1.1, comment. (n.2). Because it appears that Beal placed Johnson in charge at times when he was unavailable, Johnson was more than a mid-level supplier.

7

We also reject Johnson's assertion that the drug quantity determination already took into account his role in the offense. We have held that there is no basis for a role enhancement where a defendant's status as a mid-level distributor was already reflected in a base offense level affected by the drug quantity finding <u>and</u> where there was no "*additional* evidence" demonstrating that the defendant exercised a leadership role in the offense. <u>See</u> <u>United States v. Bryson</u>, 110 F.3d 575, 585 (8th Cir. 1997) (internal quotations omitted). As noted above, the record here, although not overwhelming, is sufficient to demonstrate that Beal placed Johnson in charge at times when Beal did not want to be disturbed. This responsibility amounts to sufficient "*additional* evidence" to demonstrate that Johnson exercised a leadership role warranting an enhancement under USSG § 3B1.1. <u>Bryson</u>, 110 F.3d at 585 (internal quotations omitted).

We conclude that the district court did not commit clear error by finding that Johnson was a leader, organizer, manager or supervisor in the criminal offense and entitled to an enhancement for his role in the offense. Additionally, because neither this finding nor the finding that the offense involved more than five participants was clearly erroneous, the district court's only option was to impose either a three- or four-level enhancement. However, because Johnson's sentence is already capped by the statutory maximum sentence at a level below his applicable guideline sentencing range, the understandable error of not imposing either a three- or four-level enhancement does not require reversal or remand in this case.

III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

8

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.