# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-3799

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Allen Steven Mickle, also known as | * |
| Allen Stevenson Mickle, | * |
| | * |
| Appellant. | * |

_____

No. 05-4344

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Sylvester Mickle, also known as "Star", | * |
| | * |
| Appellant. | * |

_____

Submitted: June 13, 2006
Filed: October 3, 2006

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Twin brothers Allen and Sylvester Mickle pled guilty to conspiring to defraud the United States with respect to false claims, in violation of 18 U.S.C. § 286, and four counts of aiding and abetting false claims against the United States, in violation of 18 U.S.C. §§ 2 and 287. The charges arose from a scheme in which the two brothers recruited persons to file fraudulent federal and state income tax returns. The participants filed tax returns using their own names and social security numbers, claiming refunds based on false W-2 forms that identified legitimate employers with accurate corresponding employer identification numbers. Allen and Sylvester also directed the participants to engage tax preparers, such as H&R Block and Jackson Hewitt, to prepare and file their federal and state tax returns using the fraudulent W-2 forms, and to apply to the tax preparers for "refund anticipation loans" – cash advances secured by anticipated tax refunds, which were obtained through the tax preparers and affiliated financial institutions.

The government presented evidence that each participant who filed a fraudulent tax return received $1500 plus the entire refund from the filed Minnesota tax return. There was additional evidence that a participant in the scheme received a $500 bonus whenever a return was filed by another person whom the participant had recruited. Evidence from some participants indicated that the Mickle brothers received the remaining proceeds derived from the federal refunds and refund anticipation loans.

The district court[1] sentenced Allen and Sylvester to 70 and 41 months' imprisonment, respectively. The Mickles appeal their sentences, and we affirm.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

I.

Allen and Sylvester first contend that the district court erred by applying an upward adjustment to each of their base offense levels for their roles as organizers and leaders of the conspiracy. The advisory sentencing guidelines applicable in this case provide for an upward adjustment of four levels if the defendant was an organizer or leader of a criminal activity that involved five or more participants. USSG § 3B1.1(a) (2002). Factors the court should consider in determining whether a defendant was an "organizer" or "leader" include the defendant's exercise of decision making authority, the nature of the defendant's participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree to which the defendant participated in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority the defendant exercised over others. *Id.* § 3B1.1, comment. (n.4); *United States v. Brockman*, 183 F.3d 891, 899 (8th Cir. 1999). More than one participant in a particular criminal activity can qualify as an organizer or leader. USSG § 3B1.1, comment. (n.4); *see also Morphew v. United States*, 909 F.2d 1143, 1145 (8th Cir. 1990). We examine *de novo* the district court's application of the guidelines and review findings of fact for clear error. *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005).

We conclude that the district court did not err by finding that both Allen and Sylvester were organizers or leaders of this criminal activity. Both defendants admitted that they arranged for the filing of tax returns by other individuals, recruited the participants, and provided the fraudulent W-2 forms. They also testified that they directed the recruited participants to take the fraudulent W-2 forms to tax preparers, and urged the participants to apply for refund anticipation loans. For at least some of the transactions, Allen and Sylvester also explained that after paying participants $1500 and paying recruiters $500, they shared the remainder of the federal refund. They both testified that they sometimes accompanied the participant to the tax

-3-

preparer when the loan check or refund was ready, and they also typically held the copies of the tax returns filed by the participants.

At the brothers' sentencing hearing, Special Agent Timothy Nichols, an agent for the IRS Criminal Investigation Division, summarized information he gathered from interviews of 29 of the participants in the criminal activity. Nichols testified that the participants "typically use[d] the same W-2s or the same employers on many of the W-2s," that they kept "$1500 of the federal tax refund and the entire state refund," while the "balance of the federal refund then would go to the people . . . orchestrating the scheme," and that the "wage and withholding amounts are very similar on some of the W-2s[,] . . . some of them to the penny." (S. Tr. at 38). Several of the participants he interviewed explained that "the physical description of the person or persons involved in the scheme [was of] a black male with braids[,] or twins," (*id.*), and "[s]ome of them knew [the brothers] by name, Allen and Sylvester, and/or Allen and Star." (S. Tr. at 39). One participant further explained to Nichols that "[s]he thought [the two Mickle brothers] were equally involved" in the scheme. (S. Tr. at 17). Nichols testified that from the information he learned through these interviews, he concluded that Allen and Sylvester fit "[a]t the top" of this conspiracy. (S. Tr. at 47).

The admissions of the defendants and the evidence gathered by Agent Nichols provided a sufficient foundation for the district court to conclude that the Mickle brothers recruited accomplices, helped plan the offense, claimed a right to a greater share of the proceeds, and exercised control over other participants by setting the terms of the arrangement. They also accompanied other participants at critical points in the process, and maintained possession of important documents. Allen argues that he played a more limited role in the conspiracy than Sylvester and should not have been characterized as an organizer or leader. While Sylvester played a lead role in obtaining or creating the fraudulent W-2 forms, and accompanying participants to receive a refund check or refund anticipation loan, it is not necessary that each

-4-

organizer or leader be responsible for the same actions in the criminal scheme or even that each party with an aggravating role be equally culpable. *See United States v. Antillon-Castillo*, 319 F.3d 1058, 1060 (8th Cir. 2003) ("A defendant need not be *the* leader of an organization . . . in order to be a leader under § 3B1.1(a)."). Allen's involvement in recruiting accomplices, planning the offense with his brother, and receiving a substantial share of the proceeds provided a sufficient basis to find that he was an organizer or leader. The district court's finding regarding Allen's role in the offense was not clearly erroneous.

## II.

Allen also contests the district court's conclusion that he was jointly responsible with Sylvester for the entire tax loss involved in the conspiracy. The district court found that the total tax loss, defined as "the loss that would have resulted had the offense been successfully completed," USSG § 2T1.1(c)(1) (2002), was between $200,000 and $400,000, which corresponds to a base offense level of 18. USSG § 2T4.1(G), (H) (Supp. Jan. 25, 2003). Allen argues that because of his relatively limited participation in the conspiracy, as contrasted with his brother Sylvester's role, he was responsible for only $80,000 to $120,000 of the tax loss, which corresponds to a base offense level of 16. *Id.* § 2T4.1(F), (G). Allen contends that the offense conduct was not a single conspiracy encompassing all of the conspirators and transactions, but rather a set of multiple conspiracies, some of which he says involved Sylvester but not Allen. Allen asserts that he should not be accountable for a subset of conspiracies in which he was not involved.

Each defendant in a "jointly undertaken criminal activity" is accountable for his own conduct and for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B) (2002). Thus, to attribute offense conduct to a particular defendant, the district court must find that the conduct was in furtherance of the conspiracy, and reasonably

foreseeable to the defendant. *United States v. Rogers*, 982 F.2d 1241, 1246 (8th Cir. 1993); *see also United States v. Mellen*, 393 F.3d 175, 183 (D.C. Cir. 2004).

The district court found that the entire loss was "reasonably foreseeable in furtherance of jointly undertaken criminal activity," and we conclude that this finding was not clearly erroneous. Allen pled guilty to count one of the superseding indictment, which charged that he conspired with Sylvester and others to defraud the United States by obtaining payment or allowance of false claims from February 23, 2002, through April 2003. The indictment alleged that while both brothers participated in certain fraudulent transactions, on some occasions – within this single conspiracy – "only one of the defendants or another co-conspirator" would take the participant to file a false tax return with the tax preparer, or to pick up the check with proceeds from the refund anticipation loan. (R. at 3, 4). The conspiracy count also alleged that "[a]s a result of the defendants' conspiracy, over $200,000 of false claims were made to the Internal Revenue Service." (R. at 5).

We have held that when a defendant pleads guilty, he "admits all of the factual allegations made in the indictment," at least where he does not specifically state that he disagrees with certain facts recited in the charging document. *United States v. White*, 408 F.3d 399, 402-03 (8th Cir. 2005) (internal citation and quotation omitted). In this case, Allen agreed that "during the years 2002 and 2003," he and his brother arranged for the filing of tax returns by other individuals, (Plea Tr. at 26-27), and Allen never disputed any of the specific factual allegations in the charges to which he pled guilty. Under those circumstances, Allen is foreclosed from arguing at this stage that the false claims making up the $200,000 loss alleged in the conspiracy count were not actually part of the conspiracy to which he pled guilty.

III.

Allen also argues that after the district court found that he accepted responsibility for his offense and decreased his offense level by two levels in accordance with USSG § 3E1.1(a) (2002), the court erred by not decreasing the offense level by one additional level pursuant to § 3E1.1(b). The latter subsection provided, as of the date of the offense, that if a defendant qualifies for the two-level decrease under § 3E1.1(a), then the court should apply the additional one-level decrease if the defendant has assisted authorities by "timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently."

The district court applied the two-level decrease under § 3E1.1(a), but then declined to decrease the offense level by the additional level, not because of any "delay in the trial preparations," but rather because Allen "greatly minimized his role in this case," and had not sufficiently embraced his guilt. (S. Tr. at 203). This was error. Once the court found that Allen accepted responsibility for his offense, it did not have discretion to decline to decrease the offense level by an additional level for reasons unrelated to the steps described in § 3E1.1(b). *United States v. Rice*, 184 F.3d 740, 742 (8th Cir. 1999). If Allen timely notified authorities of his intention to plead guilty, then he should have qualified for a three-level decrease.

Nevertheless, we conclude that the error was harmless. "If the sentence imposed falls within the guideline range urged by the appellant and if it is clear that the sentencing court would have imposed the same sentence regardless of whether the appellant's argument for a lower guideline range ultimately prevailed, there can be no reversible error in the sentence." *United States v. Harris*, 390 F.3d 572, 573 (8th Cir. 2004) (internal quotation and citation omitted). Had Allen received a three-level adjustment under § 3E1.1, the resulting sentencing range under the advisory guidelines would have been 63-78 months' imprisonment, rather than the range of 70-

87 months used by the district court. The sentence of 70 months imposed by the district court falls within both advisory ranges. The court specifically announced, moreover, that it would have imposed a 70-month sentence even if it had applied the full three-level decrease for acceptance of responsibility. The court explained that "whether one approaches it from the sentencing guideline analysis that I have discussed or from a more general overarching theme of the objectives for sentencing as they are set forth in Section 3553(a) ... [s]eventy months is the appropriate sentence given the totality of the circumstances." (S. Tr. at 212). We conclude that the sentence was reasonable with regard to § 3553(a), and the error in calculating the advisory guidelines was harmless. *See Mashek*, 406 F.3d at 1017.

IV.

Finally, the Mickles challenge the district court's order of restitution to the State of Minnesota and the private financial institutions from whom the conspirators obtained refund anticipation loans. They contend that because the offense of conviction was limited to a conspiracy to defraud the United States, the court was authorized to order restitution only to the federal government.

The Mandatory Victims Restitution Act ("MVRA") provides that in a case involving an offense against property, including any offense committed by fraud or deceit, the district court shall order restitution to "the victim of the offense." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). A "victim" means "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme." 18 U.S.C. § 3663A(a)(2). We consider *de novo* the district court's application of the MVRA, and review the restitution order for abuse of discretion. *United States v. Liner*, 435 F.3d 920, 926 (8th Cir. 2006).

The Mickles pled guilty to an offense that involves a conspiracy as an element. Although the offense of conviction involves a conspiracy to defraud the United States, the MVRA authorizes an order of restitution to any person "directly and proximately harmed" as a result of the conspiracy, even if the offense of conviction did not require proof of an agreement to defraud those particular victims. Count one of the superseding indictment detailed a conspiracy in which the object was "to obtain money from the United States through the Internal Revenue Service, *from the State of Minnesota* through the Department of Revenue, *and through various financial institutions* by filing false state and federal 2001 and 2002 income tax returns claiming refunds to which the co-conspirators knew they were not entitled and, in some instances, obtaining 'Refund Anticipation Loans.'" (R. at 2 ¶ 3) (emphasis added). As part of the charged conspiracy, the defendants directed co-conspirators to hire tax preparers to file returns based on the fraudulent W-2 forms, and to apply for refund anticipation loans from the tax preparers. (R. at 3 ¶ 8, 4 ¶ 10). In addition, the indictment charged that co-conspirators filed fraudulent federal and state tax returns, and asserted that the filing co-conspirators were generally allowed to keep the entire state refund. (R. at 2 ¶ 4, 5 ¶ 13).

The defendants admitted that obtaining state tax refunds and loans from private financial institutions based on false tax returns was part of the conspiracy to which they pled guilty. (Plea Tr. at 28-29, 33-35, 65, 67-72, 74, 76-77); *see White*, 408 F.3d at 402-03. The harm to the State of Minnesota and private financial institutions was directly and proximately caused by the offense conduct, as the persons recruited to file false tax returns obtained refund anticipation loans or state tax refunds as a direct consequence of preparing or filing the false documents arranged by the Mickles. The district court thus did not err in concluding that the MVRA authorized restitution to these parties. The court's decision to order restitution in the amount of the actual losses caused by the criminal conduct, approximately $127,000, was not an abuse of discretion.

\* \* \*

For these reasons, the judgment of the district court is affirmed.

_____