# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 07-2402

_____

United States of America,         \*

                            \*

          Appellee,       \*

                            \*      Appeal from the United States

     v.                   \*      District Court for the

                            \*      District of Minnesota.

Stephen Michael Farish,     \*

                            \*

          Appellant.     \*

_____

Submitted: February 14, 2008
Filed: July 28, 2008

_____

Before MELLOY, GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Stephen Michael Farish was convicted of one count of arson, in violation of 18 U.S.C. §§ 844(i), (n) and 2, and six counts of making false statements, in violation of 18 U.S.C. § 1001. The district court sentenced Farish to 108 months' imprisonment and ordered him to pay $73,873.36 in restitution. Farish now appeals both his conviction and sentence. We affirm the conviction but vacate a portion of the restitution award and remand for imposition of a corrected sentence.

## I.    BACKGROUND

In November 2002, Monica Leinen, Farish's girlfriend, damaged his vehicle by scratching it with a key following a verbal argument. According to Leinen's testimony, however, Farish believed Susan Metzger had damaged his vehicle. Metzger was a friend of Leinen who had allowed Leinen to stay with her after an incident of domestic abuse between Farish and Leinen.

In his anger at Metzger, Farish hired Che Romero to start a fire at the home Metzger rented at 117 Diamond Lake Road West in Minneapolis, Minnesota. Romero mistakenly targeted the wrong home and on November 21, 2002, set fire to two vehicles owned by Kirby and Shannon Bauer that were parked in front of their home at 5401 Wentworth Avenue South in Minneapolis. On December 5, 2002, Romero, accompanied by his cousin Miguel Monette, returned to 5401 Wentworth Avenue South and threw two Molotov cocktails at the residence, again mistakenly targeting the Bauers' home. On December 18, 2002, Romero started a fire at Metzger's home at 117 Diamond Lake Road West, placing an incendiary device in the doorway of the residence. After the fire at the Diamond Lake Road West home, Farish arranged for Romero to steal a Dodge Caravan from Denny Hecker Rosedale Dodge ("Rosedale Dodge"), the dealership where Farish worked, by leaving the keys in the van. The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") investigated the fires, and during the investigation Farish made at least six false statements to ATF agents denying that he knew an individual named Che or Che Romero.

A grand jury indicted Farish on one count of arson, charging that he, along with Romero, "did maliciously destroy, attempt to maliciously damage and destroy, and conspire to maliciously damage and destroy, by means of fire, the building located at 117 Diamond Lake Road West"; one count of possession of an unregistered firearm; one count of illegal manufacture of a firearm; one count of possession of a firearm with no serial number; and six counts of making false statements to ATF agents.

At Farish's trial, the Government presented testimony that Farish had committed two acts of domestic abuse against Leinen during the course of their relationship. Farish objected, arguing that the evidence was inadmissible and constituted improper character evidence in violation of Federal Rule of Evidence 404(b). The Government argued that the evidence was relevant to demonstrate Farish's motive and was not unfairly prejudicial. The Government theorized that Farish had committed the arson in response to the keying of his car, which he attributed to Metzger because of the "bad blood" that resulted from the domestic abuse incidents perpetrated by Farish against Metzger's friend, Leinen. The Government also argued that the domestic abuse explained why Leinen was afraid of Farish and failed to come forward immediately to report his crimes. The district court admitted the evidence as it related to Farish's motive, intent and plan in carrying out the arson and gave a limiting instruction to the jury after Leinen testified. When the district court offered to repeat the limiting instruction to the jury at the end of the trial, Farish's counsel stated that he was "satisfied with what [the district court] said during the trial."

The jury returned a guilty verdict against Farish on the arson count and the six counts of making false statements but returned a not guilty verdict on the remaining counts. At sentencing, the district court explicitly stated that it would "base its sentence on what it saw and it heard at trial." The district court applied a base offense level of 24, finding that under the United States Sentencing Guidelines § 2K1.4(a)(1), Farish knowingly created a substantial risk of death or serious bodily injury. The district court then added a two-level enhancement for Farish's role in the offense under § 3B1.1(c) and a two-level enhancement for obstruction of justice under § 3C1.1, for a total offense level of 28. With a criminal history category of II, Farish's advisory sentencing guidelines range was 87 to 108 months' imprisonment. The court sentenced Farish to 108 months' imprisonment on count one, 60 months' imprisonment for each of the six counts of making false statements, to be served concurrently, and three years' supervised release. The court also ordered Farish to pay

$73,873.36 in restitution to Shannon and Kirby Bauer; Robert Barrett Campbell, owner of the Diamond Lake Road West home; State Farm Home Insurance and State Farm Insurance Auto Claims (collectively "State Farm"); and Rosedale Dodge.

Farish appeals his conviction and sentence. He argues that the district court erred by allowing the Government to present the domestic violence evidence; by giving improper jury instructions that constructively amended the indictment; by determining a sentencing guidelines base offense level of 24; and by ordering restitution for the Bauers, State Farm and Rosedale Dodge.

## II.    DISCUSSION

### A.    Domestic Violence Evidence

Farish first argues that the district court erred in admitting evidence of his acts of domestic abuse against Leinen pursuant to Federal Rule of Evidence 404(b). Rule 404(b) prohibits the introduction of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," although such evidence may be admissible "for other purposes, such as proof of motive . . . intent . . . [or] plan . . . ." Fed. R. Evid. 404(b). To admit evidence under Rule 404(b), the evidence "must (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value." *United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006) (quotation omitted). Rule 404(b) permits other-acts evidence to be offered to demonstrate motive, as it is "separate and distinct from the impermissible purpose of showing propensity." *See United States v. Gipson*, 446 F.3d 828, 831 (8th Cir. 2006) (allowing other-acts evidence to demonstrate the defendant's knowledge, intent and plan); *see also United States v. Drapeau*, 414 F.3d 869, 875 (8th Cir. 2005).

We review a district court's decision to admit evidence under Rule 404(b) for abuse of discretion and "reverse only when the evidence clearly had no bearing on the case and was introduced solely to show defendant's propensity to engage in criminal misconduct." *United States v. Walker*, 428 F.3d 1165, 1169 (8th Cir. 2005).

The Government argues that the evidence of Farish's domestic abuse was relevant because it explained the prior relationship between Farish, Metzger and Leinen, from which the Government argues Farish's motive to commit the arson against Metzger derived. After Farish abused Leinen, she stayed with Metzger, who did not allow Farish to see Leinen. According to the Government, that incident created "bad blood" between Farish and Metzger and explained why Farish assumed Metzger had keyed his car. The Government argues that this was his motive for burning Metzger's home. Farish argues that the domestic violence evidence is extremely prejudicial and that it was irrelevant because Farish's belief that Metzger keyed his car alone explained Farish's motive.

For evidence to be inadmissible under 404(b), its probative value must be substantially outweighed by its unfair prejudice. *Johnson*, 439 F.3d at 952. While the admission of prior acts of domestic abuse can create unfair prejudice, we do not find that any unfair prejudice resulting from the domestic abuse evidence here *substantially* outweighed its probative value. We cannot conclude that this evidence "clearly had no bearing on the case and was introduced solely to show [Farish's] propensity to engage in criminal conduct." *See Walker*, 428 F.3d at 1169-70 (finding that evidence of prior conviction was admissible because it was "part of the history of [the parties'] relationship," it was relevant to motive and its probative value outweighed its potential prejudicial effect). Without the domestic abuse evidence, the jury would be left to speculate as to why Farish might conclude that Metzger keyed his car. Because the

evidence was necessary to explain Farish's motive, we conclude that the probative value of the evidence was not substantially outweighed by any unfair prejudice.[1]

Furthermore, the district court instructed the jury that it could only use the evidence of the domestic assault in considering "motive or preparation or lack of mistake or opportunity to have done the offense." After the district court gave the limiting instruction, Farish's counsel said he was satisfied with it, and, at the end of the trial, counsel again repeated that he was "satisfied with what [the district court] said during the trial." Thus, the jury was instructed on the use of the 404(b) evidence, and "[t]he limiting instruction cured whatever unfair prejudice the introduction of [the domestic abuse evidence] occasioned." *See United States v. Lothridge*, 332 F.3d 502, 504 (8th Cir. 2003); *see also United States v. Lucas*, 521 F.3d 861, 866 (8th Cir. 2008) ("A limiting instruction diminishes the danger of unfair prejudice.").

---

[1]Farish also argues that the domestic abuse incidents were not supported by substantial evidence, were not similar in kind and were overly remote in time to the arson. Substantial evidence supported the evidence of domestic abuse, as both Leinen and Metzger testified to the abuse with specific details. The domestic abuse was not overly remote in time to the arson as the last incident occurred in 2001 and the arson occurred only slightly over a year later. *See Walker*, 428 F.3d at 1170. While domestic abuse is not "similar in kind" to arson, we do not consider the similar-in-kind requirement to be as significant when the evidence is admitted to show motive as it might otherwise be if the evidence was admitted to show intent or knowledge, for instance. *See, e.g.*, *United States v. Sriyuth*, 98 F.3d 739, 747 (3d Cir. 1996) (upholding admission of evidence of sexual assault during a kidnapping trial to establish motive and the victim's lack of consent); *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982) (upholding admission of evidence of embezzlement to demonstrate motive in trial for making false entries); *see also* Glenn Weissenberger & James J. Duane, Weissenberger's Federal Evidence, § 404.16 (5th ed. 2006) ("Courts do not require any specific quantum of similarity between prior acts and charged crimes when accepting evidence under a motive theory. Obviously, a dissimilar prior act is just as feasible in supplying a motive for committing a crime as is a similar prior act.").

Even if the district court had erred in admitting the evidence of Farish's acts of domestic abuse against Leinen, we conclude that such error would be harmless. *See* Fed. R. Crim. P. 52(a). "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir. 2008) (quotation omitted).

The evidence against Farish was strong. The Government presented testimony from Che Romero that Farish initially asked Romero to assault Metzger or shoot her car. Farish then proposed burning down Metzger's home in exchange for providing Romero with two vehicles. Farish provided Romero with a description of Metzger, her home and her car. Romero further testified that he called Farish after the fire at the Bauers' home and that Farish sounded "grateful" until Farish told him that he had mistakenly burned the wrong home and "wanted [Romero] to finish the job." Romero then went to Farish's work, and Farish printed out a paper with Metzger's name, phone number and address "[s]o there would be no mistakes." After the fire at Metzger's residence, Farish told Romero that he was upset because not enough damage was done, but he still arranged for Romero to steal a vehicle from Farish's employer. Leinen also testified that Farish was upset that Romero had mistakenly burned the Bauers' home instead of Metzger's residence, that Farish called Romero to tell him that he had burned the wrong home, that Farish had Romero's name and phone number in his wallet despite his denial to ATF agents that he knew Romero, and that Farish was angry at Metzger because he believed that Metzger had keyed his car. In light of the strength of the evidence supporting the conviction, we conclude that the admission of the domestic abuse evidence had, at most, a slight effect on the verdict and, therefore, any error was harmless. *See McPike*, 512 F.3d at 1055.[2]

_____

[2]Moreover, in spite of the allegedly prejudicial evidence, the jury acquitted Farish on three of the counts, which leads us to conclude that the jury considered the evidence presented on each charge. *See, e.g.*, *United States v. Mahasin*, 442 F.3d 687,

## B. Jury Instructions

For the first time on appeal, Farish challenges the jury instructions given at the close of evidence. Generally we review jury instructions for abuse of discretion. *United States v. Gill*, 513 F.3d 836, 849 (8th Cir. 2008). "[W]e recognize that district courts are entitled to 'broad discretion in formulating the jury instructions.'" *United States v. Hayes*, 518 F.3d 989, 994 (8th Cir. 2008) (quoting *United States v. Johnson*, 278 F.3d 749, 751 (8th Cir. 2002)). "We review the instructions given as a whole and affirm if they fairly and adequately submitted the issues to the jury." *Id.* (quotation omitted). "When there is no objection to the instructions in question at trial . . . we review for plain error, reversing only if there is clear error that affects substantial rights." *Gill*, 513 F.3d at 849. Farish argues that the jury instructions constructively amended the indictment because they allowed the jury to convict him based on the arson at the Wentworth Avenue South home and not on the arson at the Diamond Lake Road West home that was charged in the indictment; because the jury instructions did not require the jury to find beyond a reasonable doubt that the object of the conspiracy was to commit arson on a building used in interstate commerce; and because the indictment charged Farish using the conjunctive while the jury instructions allowed for his conviction for arson or aiding and abetting arson or conspiracy to commit arson.

"A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through . . . the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment." *United States v. Whirlwind Soldier*, 499 F.3d 862, 870 (8th Cir. 2007), *cert. denied*, 552 U.S. ---, 128

---

690 (8th Cir. 2006) (finding harmless error when, although evidence of prior convictions was improperly admitted, the other evidence was overwhelming and the jury acquitted the defendant on one of the charges).

S. Ct. 1286 (2008). "A variance arises when the evidence presented proves facts that are 'materially different' from those alleged in the indictment." *Id.* (quotation and alteration omitted). "The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." *United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000). A variance is harmless error if it does not prejudice a defendant's right to notice, while a constructive amendment is reversible error per se. *Whirlwind Soldier*, 499 F.3d at 870. "The distinction between a constructive amendment and a variance is clear in theory, but often blurred in application." *Stuckey*, 220 F.3d at 981.

The grand jury returned an indictment charging that Farish, along with Romero,

> did maliciously destroy, attempt to maliciously damage and destroy, and conspire to maliciously damage and destroy, by means of fire, the building located at 117 Diamond Lake Road West, Minneapolis, Minnesota, used in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 844(i), 844(n), and 2.

At the close of evidence, the district court instructed the jury that the arson count

> alleges a number of different means or methods by which that is . . . [the arson] could have occurred. It charges that he violated by conspiring to commit an arson, aiding and abetting in the arson. The government is not required to prove all of the means or the methods. But each juror must agree with the other jurors, that the same means or methods were in fact employed or engaged in by the defendant in committing the crime charged. You need not unanimously agree, as I said, on each mean or method, but in order to convict, you must agree that at least one was done and must do so unanimously. Unless the government has proven the same means or method to each of you beyond a reasonable doubt, you must acquit the defendant of the crime charged in the indictment.

Trial Tr. at 949-50 ("means or method instruction"). The district court then instructed the jury on the crime of conspiracy to commit arson, stating that

> The crime of conspiracy to commit arson, which is charged in Count 1, has three essential elements. They are, first, that on or about November 2002 until about December 18, 2002, two or more persons reached an agreement, or came to an understanding to commit an arson; two, the defendant voluntarily and intentionally joined in this agreement or understanding, either at the time it was first reached, or at some later time while the agreement was still in effect; and third, that at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or the understanding.

Trial Tr. at 950-51 ("conspiracy elements instruction").

After defining the elements of conspiracy, the district court told the jury that it would define the crime of arson as charged in the indictment to "help [the jury] decide whether or not there was an agreement to do it." In defining the crime of arson, the district court instructed that

> The crime of arson, as charged in Count 1 of the indictment, has three elements. One, the defendant damaged the building located at 117 Diamond Lake Road West, [] Minneapolis, Minnesota, by fire; two, the defendant did so maliciously; and three, at the time of the fire, the building located at that address was used in interstate commerce.

Trial Tr. at 953-54 ("arson elements instruction").

Farish argues that the jury instructions required the jury to find only that there was an agreement between two or more people to commit "an arson," and he argues that the jury could have convicted him based on the fire at the Wentworth Avenue South home and not on the fire at the Diamond Lake Road West home that was charged in the indictment. This appears to be an argument that the district court's

-10-

actions amounted to a variance in that Farish argues that the instructions would allow the jury to convict him on different facts than those alleged in the indictment. *See Whirlwind Soldier*, 499 F.3d at 870. However, we reject Farish's argument because the district court clearly instructed the jury in the arson elements instruction that the crime of arson required them to find that "the defendant damaged the building located at 117 Diamond Lake Road West by fire." Although the term arson was not defined within the means or method instruction or the conspiracy elements instruction, we see no reason to believe that the jury did not understand that the arson, as defined in the arson elements instruction, was limited to the Diamond Lake Road West address. Taken as a whole, we believe the instructions fairly and adequately submitted the issue to the jury. *See Hayes*, 518 F.3d at 994. Moreover, even if there were a variance, there is no evidence of prejudice to Farish's right to notice, and so it would be, at most, a harmless error. *See Whirlwind Soldier*, 499 F.3d at 870.

Farish also argues that the instructions constructively amended the indictment because they did not require the jury to find beyond a reasonable doubt that the object of the conspiracy was to commit the arson on a building used in interstate commerce, although he does not challenge whether the building actually was used in interstate commerce. However, this does not appear to be an argument that the jury convicted him on a different charge than that for which he was indicted. It instead appears to be an argument that the instructions allowed the jury to convict him without finding an element of the crime. We reject this argument. When giving the means or method and conspiracy elements instructions, the district court referred to arson without defining it. Later, however, the district court clearly instructed the jury that the crime of arson required them to find that "the building located at 117 Diamond Lake Road West . . . was used in interstate commerce." Again, we see no reason to believe that the jury did not understand that the arson, as defined in the arson elements instruction, required a unanimous finding by the jury that the Diamond Lake Road West home was used in interstate commerce. We find that the instructions, taken as a whole, sufficiently instructed the jury that it had to find unanimously that the Diamond Lake Road West home was used in interstate commerce.

-11-

Finally, Farish argues that the jury instructions constructively amended the indictment because the indictment charged Farish using the conjunctive and the jury instructions used the disjunctive. In other words, the indictment charged that Farish aided and abetted *and* conspired to commit arson, while the means or method instruction allowed the jury to find Farish guilty by finding that he either aided and abetted *or* conspired to commit arson. However, as Farish concedes, we have previously found that "[i]t is well established that an indictment may be phrased in the conjunctive, when the statute and jury instructions are phrased in the disjunctive, without creating a constructive amendment of the indictment . . . ." *United States v. Brown*, 330 F.3d 1073, 1078 (8th Cir. 2003). Further, "[p]roof of any one of the violations charged conjunctively in the indictment will generally sustain a conviction." *United States v. Vickerage*, 921 F.2d 143, 147 (8th Cir. 1990). The means or method instruction clearly required the jury to find unanimously either that Farish had conspired to commit arson or had aided and abetted arson and so did not constructively amend the indictment.

The jury instructions did not constructively amend the indictment, constitute a variance, or even constitute plain error. Taken as a whole, the jury instructions fairly and adequately submitted the issues to the jury. *See Hayes*, 518 F.3d at 994. Consequently, we do not find error, plain or otherwise, in the instructions.

## C.    Sentencing Guidelines' Base Offense Level

Farish next argues that the district court erred in determining his advisory sentencing guidelines base offense level. "We review a district court's factual findings for clear error and its interpretation and application of the sentencing guidelines de novo." *United States v. Wells*, 469 F.3d 716, 720 (8th Cir. 2006).

Section 2K1.4 of the sentencing guidelines addresses convictions for arson-related offenses, including property damage by use of explosives. Under § 2K1.4(a)(1), the base offense level is "24, if the offense (A) created a substantial risk

of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly . . . ." U.S.S.G. § 2K1.4(a)(1). Farish argues that he could not have "knowingly" created a substantial risk of death or serious bodily injury because neither dwelling was actually occupied at the time of the fire and no one was actually injured by the fires. Additionally, Farish argues that the court erred by focusing on what Romero knew when he ignited the fire at the Wentworth Avenue South home.[3]

We find that the district court did not commit clear error in concluding that Romero and Farish knowingly created a substantial risk of death or serious bodily injury. The district court, based on the testimony at the trial, found that Farish "knew [Romero] went out by night to burn and to harm and that he did it at [Farish's] instance. Indeed, there was much testimony of [Farish] going out to enjoy the show that [he] had set in place." Sentencing Tr. at 35.

We have not previously addressed the "knowingly" requirement of § 2K1.4(a)(1). Several circuits have adopted the Model Penal Code definition of knowingly when applying § 2K1.4, finding that knowledge has to be actual, rather than constructive. *See, e.g.*, *United States v. Honeycutt*, 8 F.3d 785, 787 (11th Cir. 1993); *United States v. Karlic*, 997 F.2d 564, 569 (9th Cir. 1993). Other circuits, however, have concluded that they did not need to decide whether a less stringent definition of "knowingly" applied because the district courts did not clearly err in finding that the defendants met the higher Model Penal Code standard. *See, e.g.*,

---

[3]Farish does not argue in his briefs that the offense did not create a substantial risk of death or serious bodily injury. In his briefs, he argues that the base offense level should have been 20, not 24. Section 2K1.4(a)(2) imposes a base offense level of "20, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense." U.S.S.G. § 2K1.4(a)(2). By arguing that the district court should have determined a base offense level of 20, he implicitly concedes that the offense created a substantial risk of death or serious bodily injury.

*United States v. Johnson*, 152 F.3d 553, 557 (6th Cir. 1998); *United States v. DiSanto*, 86 F.3d 1238, 1258 (1st Cir. 1996). In applying the Model Penal Code, courts have held that a defendant acted "knowingly" if "(1) it was practically certain that [the defendant's] actions would cause a substantial risk of death or serious injury, and (2) the defendant was aware of that fact." *Karlic*, 997 F.2d at 569; *see* Model Penal Code § 2.02(b). Here, we need not determine whether a less stringent definition of knowledge could apply because we conclude that Farish meets the more stringent definition of knowledge under the Model Penal Code.

Farish asked Romero to start a fire at a duplex in a residential area in the evening, when it was likely the residents would be home. Farish provided Romero with Metzger's name and address, promising him a vehicle in exchange for burning the home. After Farish discovered that Romero had mistakenly targeted the Bauers' home, knowing that Romero had burned the Bauers' vehicles and thrown Molotov cocktails at their home, Farish told him once again to burn Metzger's home on Diamond Lake Road West. Farish was "upset" that the fire at the Diamond Lake Road West home did not cause much damage. In the face of this evidence that Farish knew what Romero was doing, repeatedly asked Romero to start fires at homes in residential areas and was upset that not enough damage was done, we cannot say that the district court committed clear error in finding that Farish knowingly created a substantial risk of death or serious bodily injury.

Farish argues that because no one was actually injured as a result of either of the arsons and because no one was even home during either of the arsons, he could not have "knowingly" created a substantial risk of death or serious bodily injury. However, § 2K1.4(a)(1) requires the knowing creation of a substantial *risk* of death or serious bodily injury, not that death or serious bodily injury must actually result. *See DiSanto*, 86 F.3d at 1259; *Honeycutt*, 8 F.3d at 787 ("The fact that fortuitously no one was injured and extensive damage did not result does not further appellant's contention that he did not knowingly create a substantial risk of death or serious bodily injury."). Romero, at Farish's behest, placed incendiary devices at private

-14-

homes in the evening, when it was likely the occupants would be home. Although the incendiary device Romero placed at Metzger's home had not yet spread when Metzger's neighbor discovered the fire, it could have easily spread to the adjoining residences and become difficult to control before the fire department arrived. *See* U.S.S.G. § 2K1.4 app. n.2 ("Creating a substantial risk of death or serious bodily injury includes creating that risk to fire fighters and other emergency and law enforcement personnel who respond to or investigate an offense."). Thus, while no one was actually injured in either of the fires, we cannot conclude that the district court committed clear error in finding that Farish knowingly created a substantial risk of death or serious bodily injury through the fires Romero started at Farish's request and direction.

Therefore, because the district court did not commit clear error by finding that Farish knowingly created a substantial risk of death or serious bodily injury, we find the district court did not err in applying § 2K1.4(a)(1) and determining a base offense level of 24.

### D. Restitution

Finally, Farish argues that the bulk of the restitution order should be vacated. The district court ordered Farish to pay $73,873.36 in restitution: (1) $5,632.51 to Shannon and Kirby Bauer for damage to their Wentworth Avenue South home; (2) $1,200 to Robert Barrett Campbell, the owner of the Diamond Lake Road West home rented to Metzger; (3) $23,792 to State Farm Home Insurance for claims that it paid related to damage to the Bauers' home; (4) $9,714.85 to State Farm Insurance Auto Claims for claims that it paid for damage to the Bauers' vehicles; and (5) $33,804 to Rosedale Dodge, for the stolen van. Farish argues that he should only be liable for the $1,200 to Campbell for the damage to the Diamond Lake Road West home and that the remainder of the restitution should be vacated. We agree with Farish.

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A et seq., requires a district court to order restitution to victims "when sentencing a defendant convicted of" specified offenses, including crimes of violence and offenses against property under Title 18. 18 U.S.C. § 3663A(a)(1). The MVRA defines "victim" as

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). We review the district court's application of the MVRA de novo and the restitution order for abuse of discretion. *United States v. Mickle*, 464 F.3d 804, 810 (8th Cir. 2006), *cert. denied*, 549 U.S. ---, 127 S. Ct. 1308 (2007).

The Government argues that "Farish conspired with Romero to commit, and aided and abetted the commission of, an arson," that "[i]n the course of committing the arson, Farish caused damage to be done to the Bauers' cars, the Bauers' home, and Metzger's home," and that the insurance companies and Rosedale Dodge were also damaged as a result of the commission of the crime. The Government also notes that in conspiracy cases, the restitution includes all harm caused "by the defendant's criminal conduct in the course of the . . . conspiracy . . . ." 18 U.S.C. § 3663A(a)(2). *Accord Mickle*, 464 F.3d at 810; *United States v. Senty-Haugen*, 449 F.3d 862, 865 (8th Cir. 2006).

However, in the absence of any special interrogatories, it is unclear whether the jury returned a unanimous guilty verdict against Farish on conspiracy to commit arson or on aiding and abetting the commission of an arson. If the jury had clearly convicted Farish of conspiracy to commit arson at the Diamond Lake Road West home, then the district court's entire restitution order would have been appropriate,

but the same is not true for aiding and abetting. In the absence of a conviction for an offense that involves as an element a scheme, conspiracy or pattern of criminal activity, restitution is limited to the offense of conviction. *See Hughey v. United States*, 495 U.S. 411, 416 (1990); *United States v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008) (finding that the Government failed to prove lost profits or any other actual loss "as a result of his committing the offense of conviction"). Because we cannot determine whether the jury convicted Farish of conspiring to commit arson or of aiding and abetting the arson, we must assume the jury convicted him of aiding and abetting the commission of the arson at the Diamond Lake Road West home. The charge of aiding and abetting did not have "a scheme, conspiracy, or pattern of criminal activity" as an element, and so the Bauers, State Farm and Rosedale Dodge would not have been victims under the MVRA. Therefore, we conclude that the district court abused its discretion in awarding any restitution beyond the $1,200 award to Campbell for damage to the Diamond Lake Road West home. We vacate the restitution granted to the Bauers, State Farm and Rosedale Dodge but affirm the district court's award of $1,200 to Campbell for the damage to the Diamond Lake Road West home.

## III.  CONCLUSION

Thus, we affirm Farish's conviction, uphold the term of imprisonment imposed and sustain $1,200 of the district court's restitution order. We vacate the remainder of the restitution order and remand for entry of an amended judgment.

MELLOY, Circuit Judge, concurring.

I believe the domestic violence evidence in this case was improperly admitted under Federal Rule of Evidence 404(b). I conclude the link between the contested evidence and Farish's "motive" is extremely tenuous and that any probative value is substantially outweighed by its unfair prejudicial effect. However, because I believe the other evidence against Farish was quite strong and that admission of the improper evidence was harmless error, I concur.

The government argues that the domestic abuse evidence demonstrates Farish's motive to target Susan Metzger for the arson. This argument would be much stronger if Metzger, and not Monica Leinen, had been the victim of the domestic abuse. See United States v. Walker, 428 F.3d 1165, 1170 (8th Cir. 2005) (approving the admission of evidence of prior threats as relevant to prove motive and intent in prosecution for threats against the same victim). However, here, the linkage is much more tenuous. Under the government's theory, the fact that Farish had domestically abused Leinen shows why he would conclude the woman who had taken Leinen in after the abuse would be the one who keyed his car, thereby providing a motive for retaliation against Metzger through arson. I find this logic strained, at best. First, the evidence was substantial that Metzger had given shelter to Leinen, because Leinen needed a place to stay after she and Farish had gotten into a number of arguments. The domestic abuse is only one part of the deterioration of the relationship between Farish and Leinen. The very specific evidence about the abuse Leinen suffered at Farish's hands was unnecessary to document the deterioration of the relationship or Metger's role in providing support for Leinen.

Secondly, I find the logic that Farish's domestic abuse against Leinen somehow explains his conclusion that Metzger was the one who keyed his car unpersuasive. The passage of time between Leinen's stay with Metzger and Farish's car getting keyed undermines this linkage; Farish's car was keyed in November 2002, and Leinen last stayed with Metger in April 2001. Cf. United States v. Bettelyoun, 892 F.2d 744, 747 n.1 (8th Cir. 1989) (finding, in the alternative, that an assault on the mother of the defendant's child was relevant to prove motive or plan in prosecution for killing the defendant's current lover when the assault was one hour prior to the killing). While we have approved far longer time periods between bad acts and charged offenses, see, e.g., Walker, 428 F.3d at 1170 (noting that bad acts up to thirteen years before the charged crime have been found to be admissible under Rule 404(b)), in the end, whether a prior bad act is sufficiently close in time to have probative value "is a question of reasonableness under all the circumstances." Id. Because the linkage between the domestic abuse of Leinen and the arson committed against Metzger is already strained, the passage of time between the two events further undermines any

potential probative value. Moreover, even if one accepts the linkage between Metzger's role in the aftermath of the abuse as providing motive, one can easily imagine how the evidence about Metzger's support of Leinen, and even her rule about not allowing contact with Farish at her home, could be admitted to show motive without including the facts of the abuse.

Finally, even if one assumes that there is some tenuous argument that through several steps of logic we can get from Farish's domestic abuse of Leinen to a motive to commit arson against Metzger, I believe the district court did not properly balance the prejudice against the probative value. Committing domestic abuse is socially unacceptable and generally—and properly—condemned by much of modern society. The prejudice related to such evidence is great. One can clearly see the propensity argument: if Farish is bad enough to beat his girlfriend, he is bad enough to firebomb her friend's house. In this case, the probative value is so extremely weak that I believe the prejudice clearly outweighs any value to the evidentiary record.

I do agree with the majority's analysis, for the reasons stated in the majority opinion, that the evidence against Farish was strong and that the admission of the § 404(b) evidence was harmless error.

Accordingly, I concur in the opinion.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I write separately to respectfully dissent from the court's decision in Part II.D. and disagree with its analysis of the Mandatory Victims Restitution Act. The Government argues that the Bauers and Rosedale Dodge were "directly and proximately harmed as a result" of Farish's commission of an offense, 18 U.S.C. § 3663A(a)(2), not just his conduct in the course of a scheme, conspiracy or pattern of criminal activity. As such, the court's decision wrongly centers on the distinction between aiding and abetting and conspiracy, rather than the evidence of causation.

The evidence showed that Stephen Farish hired Che Romero to start a fire at 117 Diamond Lake Road, but that Romero mistakenly targeted the Bauer's home. Ante at 2. After Farish discovered that the wrong place had been burned, he sent Romero to burn Metzger's home on Diamond Lake Road. As payment for his efforts, Farish arranged for Romero to steal an automobile from Rosedale Dodge. Id. Romero and Farish were jointly indicted with, "each aiding and abetting the other," "maliciously damag[ing] and destroy[ing], attempt[ing] to maliciously damage and destroy, and conspir[ing] to maliciously damage and destroy, by means of fire" the Metzger home. I agree with the court's conclusion that, if the jury had only convicted Farish of conspiracy to commit arson, then the district court's entire restitution order was appropriate. Ante at 17.

Assuming, however, that the jury's verdict was solely for aiding and abetting the Metzger fire, the question is whether Farish's conduct in maliciously damaging and destroying the home, or attempting to maliciously damage and destroy the home, was a direct and proximate cause of the damage to the Bauers and Rosedale Dodge. "The main inquiry for causation in restitution cases [is] whether there was an intervening cause, and, if so, whether this intervening cause was directly related to the offense conduct." United States v. Hackett, 311 F.3d 989, 992 (9th Cir. 2002) (quoting United States v. Meksian, 170 F.3d 1260, 1263 (9th Cir. 1999)). "The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." Id. at 993 (quoting United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 928 (9th Cir. 2001)).

Applying these principles to the present case, there is abundant evidence that Farish's conduct was a direct and proximate cause of the damage to the Bauers and Rosedale Dodge. Farish concocted the plan to burn the Metzger home and arranged for Romero to complete the crime. The mistaken burning of a neighbor's property was a natural and foreseeable consequence of Farish's conduct; there was no other cause of the damage except, perhaps, Farish's poor instructions or Romero's poor understanding of those instructions. The bungled execution of an intentional crime is not an intervening cause. The theft of the automobile from Rosedale Dodge was

-20-

also a direct consequence of the crime—it was Farish's way of paying off the principal offender.  Damage to both victims was directly related to Farish's conduct, and was in no way an unreasonable extension of the causal chain.

Even if he was "merely" an aider and abettor, Farish may be punished to the same extent as Romero.  18 U.S.C. § 2(a).  Restitution under the MVRA is a form of punishment.  United States v. Williams, 128 F.3d 1239, 1241 (8th Cir. 1997).  Courts have not hesitated to make an aider and abettor pay restitution to victims who were most directly harmed by the conduct of a principal offender.  E.g., Hackett, 311 F.3d at 990-91, 993 (aider and abettor of the manufacture of methamphetamine where principal offender accidentally set fire to a house); Williams, 128 F.3d at 1240 (aider and abettor to fraud related to selling cloned cell phones where buyers used the phones, causing damage to cellular companies).  It is enough that the defendant's conduct created the circumstances under which the damage occurred.  Hackett, 311 F.3d at 993; see United States v. Reichow, 416 F.3d 802, 804-05 (8th Cir. 2005) (upholding award of restitution for damage to sheriff's property and deputy's injuries during defendant's apprehension).  Farish's conduct easily meets this standard.

Consequently, I would affirm the district court's award of restitution.  I concur in this court's decision to affirm in all other respects.

_____