# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1405

_____

United States of America,            *

                              *

          Appellee,       *

                              *      Appeal from the United States

    v.                       *      District Court for the

                              *      District of Minnesota.

Shelton McPike,             *

                              *

          Appellant.     *

_____

Submitted: November 13, 2007
Filed: January 17, 2008

_____

Before MURPHY, HANSEN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury convicted Shelton McPike of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and the district court[1] sentenced him to 120 months' imprisonment. McPike challenges statements offered during his trial as inadmissible hearsay and his sentence as unreasonable. For the reasons discussed below, we affirm his conviction and sentence.

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

The firearm in question initially was purchased by Scott Byron. Nicolas Winmill then took it from Byron during an altercation over narcotics. Nicolas Winmill hid the firearm in bushes outside his father's home. He then asked his brother Robert Winmill ("Bob") to dispose of the firearm. Bob retrieved the firearm but instead of disposing of it, gave it to Jamine Schmidt as collateral for a debt he owed her. Shortly after giving the firearm to Schmidt, Bob attempted to retrieve it, but she told Bob that she could not return the firearm because it was in the possession of someone named "Shelton," later identified by Bob as Shelton McPike. Bob eventually spoke to McPike over the telephone. McPike initially told Bob that he would return the firearm for six hundred dollars, but he later refused to return the firearm and ended all contact with Bob.

The firearm eventually made its way to the home of Linda Guilfoyle, who had been in a romantic relationship with McPike until she learned that McPike was living with another woman. After Guilfoyle ended the relationship, McPike came to her home and demanded that she return his property, including his firearm in her buffet, about which she had been unaware. Guilfoyle located the firearm in a shoe box in her buffet and told McPike that she would put her daughter to sleep and then bring his possessions to his house. Before she could return his possessions, including the firearm, Guilfoyle received a message from McPike saying that he had been arrested. After receiving numerous threatening messages from McPike, Guilfoyle turned the firearm over to the police.

A grand jury indicted McPike for unlawful possession of a firearm by a felon, and the police arrested him. While in federal custody at the Sherburne County jail, McPike made numerous calls to Schmidt, which the jail recorded pursuant to its policy. The following exchange was recorded and played for the jury over McPike's hearsay objection:

McPike: I wish you never knew Bob, I wish Bob never existed.

Schmidt: Yeah I wish you had never brought it to Linda's ah Linda would have never been around.

McPike: I didn't bring nothin nobody nothin

Schmidt: I know

The jury returned a guilty verdict. In sentencing McPike, the district court adopted the Presentence Investigation Report ("PSR"), which found that McPike had a total offense level of 24 and a criminal history category of VI, resulting in an advisory sentencing guidelines range of 100 to 120 months' imprisonment. The district court denied McPike's request for a downward departure under United States Sentencing Guidelines § 4A1.3(b), finding that his criminal history was not overstated. The district court then noted that it had considered all of the factors in 18 U.S.C. § 3553(a), including McPike's extensive criminal history demonstrating continuing disrespect for the law, the seriousness of the offense and the need to protect the public, provide just punishment, deter further crimes and avoid sentencing disparities. It then sentenced McPike to 120 months' imprisonment.

McPike now appeals his conviction and sentence. He argues that his jailhouse conversation with Schmidt contained inadmissible hearsay, the admission of which affected his substantial rights, and that his sentence is unreasonable.

"We review a district court's evidentiary rulings for clear abuse of discretion." *United States v. Two Shields*, 497 F.3d 789, 792 (8th Cir. 2007). We will not reverse if the Government meets its burden of showing the error was harmless. *United States v. Moore*, 129 F.3d 989, 991 (8th Cir. 1997). An evidentiary error is harmless when, "after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *United States v. Lewis*, 483 F.3d 871, 875 (8th Cir. 2007) (quotation omitted).

McPike argues that the recording was not admissible because it contained hearsay, an out-of-court statement used to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). His statement, "I wish you never knew Bob, I wish Bob never existed," however, does not constitute hearsay because it qualifies as an admission by a party-opponent. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Edwards*, 159 F.3d 1117, 1122 n.2 (8th Cir. 1998). Nevertheless, Schmidt's statement, "Yeah I wish you had never brought it to Linda's ah Linda would have never been around," qualifies as hearsay. While the Government argues that the statement was not used to prove the truth of the matter asserted, it provides no argument to support that proposition. Moreover, the statement is evidence that McPike brought the firearm to Guilfoyle's home, which directly supports McPike's knowing possession of the firearm, an element the Government must prove to convict McPike of being a felon in possession of a firearm.

The Government argued that Schmidt's statement was admissible under the excited utterance exception to the bar on hearsay evidence because she was "crying" and "hysterical." *See* Fed. R. Evid. 803(2) ("A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."). When determining whether a declarant was still under the stress of excitement caused by the event when the declarant made the statement we consider, among other factors, "the lapse of time between the startling event and the statement." *See United States v. Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007) (quotation omitted). The Government has failed to identify a startling event or condition that caused Schmidt's stress of excitement, and we reject any argument that she was still under the stress of excitement caused by McPike's arrest three months after the fact. *See, e.g.*, *United States v. Marrowbone*, 211 F.3d 452, 455 (8th Cir. 2000) (finding that allegations of abuse made three hours after the alleged abuse were not excited utterances because of the lapse of time).

However, we hold that the erroneous admission of Schmidt's hearsay statement did not affect McPike's substantial rights because it had little or no influence on the verdict. We have reviewed the evidence and find that the Government presented overwhelming evidence that McPike was guilty of being a felon in possession of a firearm. *See United States v. Davis*, 449 F.3d 842, 847-48 (8th Cir. 2006). To convict McPike as a felon in possession of a firearm, the Government was required to "prove beyond a reasonable doubt (1) a previous conviction for a crime punishable by imprisonment over one year, and (2) knowing possession of a firearm (3) that was in or affected interstate commerce." *United States v. Smart*, 501 F.3d 862, 865 (8th Cir. 2007) (citing 18 U.S.C. § 922(g)(1)). McPike stipulated to the first and third elements of the crime, so the only issue for the jury to decide was whether McPike knowingly possessed a firearm. Knowing possession of a firearm under 18 U.S.C. § 922(g)(1) does not require physical possession; a defendant can constructively possess a firearm when he has "control, ownership, or dominion over the firearm itself," *id*. (quotation omitted). Further, claiming ownership demonstrates knowing possession of a firearm. *See, e.g.*, *United States v. Bell*, 477 F.3d 607, 613 (8th Cir. 2007).

McPike argues that Schmidt's statement is the only evidence of how the firearm came to be in Guilfoyle's house. However, this argument misses the point. The Government does not need to prove exactly how the firearm came to be in Guilfoyle's house, it need only prove McPike knowingly possessed the firearm. The Government presented overwhelming evidence that McPike knowingly possessed the firearm. LaVonnda Williamson, a friend of Guilfoyle's, testified that she heard McPike yelling at Guilfoyle that he wanted *his* firearm back. Guilfoyle testified that McPike demanded that she return *his* firearm to him and told her where it was located since she was unaware that his firearm was even in her home until he demanded she return it. Further, Bob Winmill testified that he had spoken with McPike regarding the firearm and that McPike had at first promised to return the firearm but later refused to return it. Therefore, we find that allowing the jury to hear Schmidt's statement did not affect McPike's substantial rights and that Schmidt's statement had little or no

influence on the verdict because the Government presented overwhelming evidence that McPike knowingly possessed the firearm.

McPike also challenges his sentence as unreasonable, which we review for abuse of discretion. *See Gall v. United States*, 552 U.S. ---, 128 S. Ct. 586, 596 (2007); *United States v. Lee*, 454 F.3d 836, 838 (8th Cir. 2006). We presume that a sentence within the properly calculated advisory guidelines range is reasonable. *Rita v. United States*, 551 U.S. ---, 127 S. Ct. 2456, 2462 (2007). The 120-month sentence is within the advisory guidelines range. McPike argues that the district court abused its discretion because he was not actually carrying the firearm while engaging in criminal activity and because a shorter sentence would still reflect the seriousness of the offense, deter criminal conduct, protect the public from future crimes, and provide educational and vocational opportunities for McPike. However, the district court explicitly addressed the § 3553(a) factors in imposing the sentence and found that, considering McPike's history and characteristics, the seriousness of the offense, and the need to protect the public, provide just punishment, deter further crimes and avoid sentencing disparities, the advisory guidelines sentence of 120 months' imprisonment was appropriate. The district court adequately explained the sentence "to allow for meaningful appellate review and to promote the perception of fair sentencing." *See Gall*, 128 S. Ct. at 597. McPike's arguments do not convince us that the district court abused its discretion in imposing the 120-month sentence, a sentence within the presumptively reasonable advisory guidelines range.

Accordingly, we affirm McPike's conviction and sentence.

_____