# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-2115

———————————————

United States of America

*Plaintiff - Appellee*

v.

Thomas Schropp

*Defendant - Appellant*

———————

Appeal from United States District Court
for the District of Nebraska - Omaha

———————

Submitted: February 12, 2016
Filed: July 22, 2016

———————

Before SMITH and COLLOTON, Circuit Judges, and GRITZNER,[1] District
Judge.

———————

SMITH, Circuit Judge.

—————————————

[1]The Honorable James E. Gritzner, United States District Judge for the
Southern District of Iowa, sitting by designation.

A jury convicted Thomas Schropp as a principal on the following six counts: arson of a building used in interstate commerce, in violation of 18 U.S.C. § 844(i) ("Count I"); mail fraud, in violation of 18 U.S.C. § 1341 ("Count II"); wire fraud, in violation of 18 U.S.C. § 1343 ("Counts III–V"); and arson in connection with a federal felony, in violation of 18 U.S.C. § 844(h) ("Count VI"). The district court[2] sentenced Schropp to five terms of imprisonment of 70 months on Counts I–V, to run concurrently, and one term of imprisonment of 120 months on Count VI, to run consecutive to the 70-month terms. Schropp appeals, arguing that (1) his sentence violates the Double Jeopardy Clause, (2) the district court erred in admitting certain photographs into evidence, (3) the district court abused its discretion in denying his motion for a new trial, and (4) there is insufficient evidence to support the verdict. We affirm.

## I. *Background*

Given Schropp's conviction by a jury, we recount the evidence in the light most favorable to the verdict. *See United States v. Mshihiri*, 816 F.3d 997, 1004 (8th Cir. 2016). Schropp and his uncle co-owned PK Manufacturing Corporation (PKM). Schropp ran the day-to-day operations of PKM, and his uncle's role in the business was financial. PKM manufactured lawn and garden sprayers, trailers, and other equipment associated with spraying. On November 20, 2008, a fire heavily damaged PKM's manufacturing plant in Nashville, Nebraska. In the wake of the fire, Schropp filed an insurance claim for his policy limit of nearly $4,000,000 with Sentry

---

[2]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

Insurance.[3] Sentry advanced Schropp $240,000 on his claim[4] but denied his claim after further investigation.

Law enforcement suspected arson. Eventually, William Richards admitted to starting the fire and, as part of his plea agreement, assisted law enforcement in the investigation of the fire.[5] At Schropp's trial, Richards testified that he met Schropp through Richards's sister, Cindy Mesenbrink. Schropp and Mesenbrink were acquainted through their drug use. Mesenbrink testified that in late summer 2008, Schropp asked her to arrange a meeting between Richards and himself to discuss a painting project at PKM. The meeting took place at PKM in September 2008. Richards, Mesenbrink, and Richards's girlfriend, Julie Winkelbauer, all drove to the plant, but only Richards went inside PKM to talk to Schropp. According to Richards, Schropp showed him around the plant and told him, "I will pay you 20,000 to burn it. I'll give you ten two weeks after the fire and another ten two weeks after that."[6]

---

[3]The premium for the insurance policy in 2008 was $8,651 per month. Due to nonpayment throughout 2008, Sentry sent notices to PKM that the insurance policy may be canceled. At one point, the policy was canceled and later reactivated. Sentry sent PKM an invoice on October 15, 2008, with a due date of November 6, 2008, for the month of November. Schropp paid the invoice on November 19, 2008, the day before the fire.

[4]Sentry mailed Schropp a check from its home office in Stevens Point, Wisconsin.

[5]At first, Richards claimed that he had no part in starting the fire. Once Richards started talking to law enforcement, his story changed. He claims to have lied to protect his girlfriend, who was also involved.

[6]The following evidence at trial revealed that PKM's financial situation in 2008 was dire: PKM had lost its biggest account, Tractor Supply; many of PKM's bank loans were past due; Schropp attempted to sell PKM in summer 2008 but potential buyers were dissuaded by PKM's financials; and PKM recorded substantial losses on its 2007 and 2008 tax returns.

After Richards expressed doubt that the building would burn, Schropp assured him that it would and instructed him on how to enter the plant. Schropp told Richards that he would be able to gain entry through the door on the north side of the building, which was never locked. When Richards left, he had not agreed to burn PKM's plant.

Schropp denies that this meeting or conversation ever took place. Instead, Schropp testified that he met Richards when Richards tried to sell him tools. Schropp described a second meeting with Richards that took place after the fire. At the second meeting, Schropp claims the two discussed PKM purchasing forklifts. Schropp explained that the potential sale resulted in numerous phone calls between himself and Richards as well as an in-person meeting at a local Walmart. At no time, Schropp maintains, did he ask Richards to burn PKM's plant.

In November 2008, Richards and Winkelbauer were arrested on theft charges. Richards was held in jail and needed $2,000 in order to post bond. Mesenbrink contacted Schropp and requested bond money on Richards's behalf. Schropp agreed, and he gave Winkelbauer $2,000 in cash. Schropp's bank records reflected a $2,000 cash withdrawal on the day Winkelbauer posted bond for Richards.

Richards testified that Schropp's payment of his bond motivated him to set the fire as Schropp had requested. Two days after Richards posted bond and was released from jail, he and Winkelbauer drove to PKM. Early in the morning on November 20, Richards jumped a chainlink fence, entered through the unlocked door that Schropp had disclosed to him, and ignited the fire that heavily damaged the building. Richards described the fence as six feet tall with barbed wire around most of the top but not where he crossed. Over Schropp's objection, the court admitted photographs showing the fence as Richards described.[7] Richards also explained that after he started two

_____

[7]Schropp argued that the government did not lay a proper foundation for the photographs because they were taken over five years after the fire. Schropp also

-4-

separate fires in the plant—in the office and where cardboard boxes were stacked—he opened an overhead door to feed the fire with oxygen.[8]

At trial, Winkelbauer admitted to lying about her involvement in the fire when law enforcement initially confronted her:

> [T]here were a lot of lies told at the beginning, and for whatever reason I was scared and I didn't give complete answers but the bottom line is this: On that night I drove Billy [Richards] down there. He set the fire which I saw. I drove him to the Mormon Bridge. I drove him home. We met Tom at the car wash. Tom gave us money, gave—put the money in his hand but it was our money.
>
> And he never paid us the other $10,000. But Billy definitely set that fire. I know that for sure because I saw the flames when we drove away. That's the truth.

Two weeks after the fire, Richards and Winkelbauer met Schropp. According to Richards, Schropp gave him $8,000 in cash and said, "Wow, you really burnt that place. Good job." In late 2008 to early 2009, Winkelbauer called Schropp and sent him text messages requesting the rest of the money that Schropp had originally promised. Schropp finally agreed to meet Richards and Winkelbauer at a Walmart. Richards, Winkelbauer, and a friend all drove together to meet Schropp at the Walmart, and surveillance cameras in the parking lot captured the meeting. Although only Richards got out of the car to talk to Schropp, Winkelbauer and the friend could hear Schropp yelling at Richards. Schropp was upset that Winkelbauer was trying to contact him and told Richards that if Winkelbauer "keeps calling me and leaving me

---

argued that the photographs were not relevant. To the extent they were, he argued that they were unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.

[8]A civilian who reported the fire and several firefighters on scene at the fire testified to seeing fires in two distinct parts of the plant.

messages like that, we're going to get caught." When Richards asked for the rest of the money, Schropp told him that there would "be no more money" because the fire was being investigated.

Later, Schropp asked Richards to meet with him at his apartment. When Richards arrived, Schropp told him that they needed to have an explanation for how they knew each other. Richards testified that Schropp's forklift story originated at this meeting. Schropp was still concerned about the investigation and refused to give Richards any more money until the investigation was over. In December 2011, Richards met with investigators in the United States Attorney's Office and began assisting them with the investigation.

Schropp's trial lasted 9 days and involved approximately 118 government exhibits, 4 defense exhibits, 28 government witnesses, and 4 defense witnesses. At the conclusion of the government's case, Schropp moved for a judgment of acquittal. The district court denied his motion. Schropp later renewed his motion for a judgment of acquittal, which the district court again denied. The district court read the final jury instructions to the jury. Specifically, the district court read a cooperating-witness instruction to the jury that explained that in exchange for Richards's assistance, the government could recommend a sentence that may be less than the mandatory minimum sentence that Richards faced. The district court mistakenly informed the jury that Richards faced no mandatory minimum for arson. The district court realized its mistake, immediately ordered the jury to be brought back in, and informed the jury as to the correct instruction.

The jury convicted Schropp on all counts. Schropp moved for a judgment of acquittal or, in the alternative, a new trial. The district court denied both motions. Schropp now appeals.

II. *Discussion*

On appeal, Schropp argues that (1) his sentence violates the Double Jeopardy Clause of the United States Constitution, (2) the district court erred in admitting certain photographs into evidence, (3) the district court abused its discretion in denying his motion for a new trial, and (4) there is insufficient evidence to support the verdict.

A. *Double Jeopardy*

Schropp first raised double jeopardy as an issue at his sentencing hearing. Schropp contends that his conviction under 18 U.S.C. § 844(h)— arson in connection with a federal felony—is an impermissible double punishment, in violation of the Double Jeopardy Clause of the United States Constitution. *See* U.S. Const. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."). Essentially, the Double Jeopardy Clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnote omitted), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

When timely raised, we review double-jeopardy challenges de novo. *United States v. Anderson*, 783 F.3d 727, 739 (8th Cir. 2015), *cert. denied* 136 S. Ct. 199, *cert. denied* 136 S. Ct. 200, *and cert. denied* 136 S. Ct. 347 (2015). In 2014, Rule 12 of the Federal Rules of Criminal Procedure was amended to require that a challenge such as Schropp's be raised in a pretrial motion. *See* Fed. R. Crim. P. 12(b)(3)(B)(ii) (requiring a defense based on "charging the same offense in more than one count (multiplicity)" "be raised by pretrial motion"). An untimely motion under Rule 12(b)(3) will only be considered by a court "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). In its issuing order, the Supreme Court directed courts to apply the amended rules "in all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order amending Fed. R. Crim. P. (Apr. 25, 2014).

Schropp's case was "then pending" when the amended rules took effect on December 1, 2014. Provided it is "just and practicable," we are to apply the new rules to Schropp's case. Under the new rule, Schropp's double-jeopardy defense is untimely and will not be reviewed unless he demonstrates "good cause."

We conduct a case-by-case analysis to determine whether applying an amended rule to a pending case is "just and practicable." *See United States v. Duke*, 50 F.3d 571, 575 (8th Cir. 1995) (quotation and citation omitted). "Just and practicable" is a standard that is commonly applied in the amended-rule context. *See, e.g.*, *United States v. Head*, 340 F.3d 628, 630 (8th Cir. 2003); *Duke*, 50 F.3d at 575; *Reed v. Jones & Laughlin Steel Corp.*, 606 F.2d 233, 234 (8th Cir. 1979) (per curiam). As stated, application of the amended rule must be both just and practicable.

We conclude that it is just and practicable to apply the amended version of Rule 12. Under the previous version of Rule 12, Schropp was still required to raise his double-jeopardy challenge in a motion "before trial." *See* Fed. R. Crim. P. 12(b)(3) (2013). The rule's requirement that motions alleging "'errors in the indictment or information' must be made before trial is unchanged." Fed. R. Crim. P. 12 advisory committee's note to 2014 amendments. The amended rule clarifies that the consequence of an untimely motion applies regardless of whether the party "intended to relinquish a defense, objection, or request that was not raised in a timely fashion." *Id.*; *cf. United States v. Robertson*, 606 F.3d 943, 950 (8th Cir. 2010) (permitting plain-error review of certain untimely motions under Rule 12(b)(3)). Applying the amended rule is not unjust and presents no practical challenges in Schropp's case.

Therefore, we will not review Schropp's double-jeopardy challenge unless he shows "good cause." Schropp makes no attempt in his briefing to show "good cause" for his untimely motion. The basis for Schropp's double-jeopardy challenge was readily discernible from the face of his indictment. In separate counts, the indictment

clearly charged him with both arson of a building used in interstate commerce (Count I) and arson in connection with a federal felony (Count VI). Therefore, we decline to review Schropp's double-jeopardy challenge.

## B. *Evidentiary Rulings*

Schropp next claims that the district court erred by admitting two photographs into evidence. The photographs were taken two weeks prior to trial, years after the night of the fire, and depicted PKM's plant and its surrounding premises. Schropp objects to the admission of the photos on three grounds. First, he argues that the government did not lay a proper foundation for the photographs because they were taken over five years after the fire. Second, he argues that the photographs are not relevant. Third, to the extent they are relevant, he argues that they were unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.

We review a district court's rulings on the admissibility of evidence for a clear and prejudicial abuse of discretion. *Pittman v. Frazer*, 129 F.3d 983, 989 (8th Cir. 1997). Reversal of an evidentiary ruling is warranted only if it "was based on an erroneous view of the law or a clearly erroneous assessment of the evidence and affirmance would result in fundamental unfairness." *Wegener v. Johnson*, 527 F.3d 687, 690 (8th Cir. 2008) (quotations and citation omitted). We will not reverse an erroneous evidentiary ruling if the error was harmless. *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir. 2008). "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *Id.* (quotation and citation omitted).

A photograph is admissible if it is "an accurate representation of the thing depicted as it appeared at the relevant time." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 569 (8th Cir. 2009) (citation omitted). Because the photographs were not taken nearer in time to the fire, Schropp questioned their reliability and relevance. The

district court addressed and rejected Schropp's argument. The court reasoned that fences rarely undergo substantial change in that period of time. Further, the court noted that Schropp had the opportunity to discredit the reliability of the photographs on cross-examination. As the proponent of the evidence, though, the government was obligated to authenticate the photographs as accurate representations of the fence as it appeared at the relevant time. *See id.* The fence may not have changed much, if any, between the time of the fire and the government's photograph exhibits. Nevertheless, it was the government's obligation to establish that fact in order to introduce the photographs. Put simply, the government inadequately established that the photographs of the fence accurately represented its appearance at the relevant time. It was error for the district court to admit the photograph on this shaky foundation.

We decline to reverse, however, because the error was harmless. The admission of the photographs had little or no influence on the verdict and thus did not affect Schropp's substantial rights. *See McPike*, 512 F.3d at 1055. They corroborated Richards's account of needing to jump a fence in order to get into PKM's plant. As Schropp admitted during his objection at trial, the photographs merely provided a different perspective of PKM's premises than that of an aerial photograph taken the day of the fire that was already in evidence. To be sure, the photographs to which Schropp objected more clearly showed the fence than did the aerial photograph, but the fence was nonetheless visible from the aerial photograph. Moreover, there was substantial evidence of Schropp's guilt, and the photographs were not instrumental in establishing his guilt. Admission of these photographs did not affect Schropp's substantial rights. *See id.*

## C. *Motion for a New Trial*

Schropp also argues that the district court abused its discretion when it denied his motion for a new trial under Federal Rule of Criminal Procedure 33. We review a district court's decision to grant or deny a motion under Rule 33 for an abuse of discretion. *United States v. Campos*, 306 F.3d 577, 580 (8th Cir. 2002). Rule 33(a)

grants a district court discretion to "vacate any judgment and grant a new trial if the interest of justice so requires." In considering a motion for a new trial, the district court is permitted to "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Campos*, 306 F.3d at 579 (quotation and citation omitted). Nevertheless, this broad discretion should be exercised "sparingly and with caution." *Id.* (quotation and citation omitted).

The district court did not abuse its discretion in denying Schropp's motion for a new trial. Schropp avers that the district court committed two errors. First, he argues that the district court should have discredited the accounts of Richards and Winkelbauer. Second, he argues that the district court's mistaken cooperating-witness instruction infected the trial with such error that a just outcome was not possible.

Although the district court was free to weigh the testimonies of Richards and Winkelbauer differently than the jury, it declined to do so. The district court was in a much better position to assess their testimony than this court. We find no abuse of discretion in the court's decision not to grant a new trial. As to Schropp's alleged jury-instruction error, we discern no reversible error. The district court initially incorrectly instructed the jury that Richards faced no mandatory minimum imprisonment due to his cooperation. The court promptly corrected the instruction. Schropp contends that the jury could more easily infer a motive to lie on Richards's part based on the incorrect instruction than on the corrected instruction. Even if that were so, the error was insubstantial and quickly corrected. In contrast, the evidence against Schropp was substantial and mostly uncontroverted. The district court did not abuse its discretion in determining that justice did not demand a new trial.

## D. *Sufficiency of the Evidence*

Schropp's final argument is that there was insufficient evidence to sustain the verdict. As such, Schropp contends that the district court erred in denying his motion for a judgment of acquittal. We review de novo a district court's denial of a motion

for a judgment of acquittal. *United States v. Thomas*, 565 F.3d 438, 441 (8th Cir. 2009). We review the evidence in the light most favorable to the verdict, accepting all reasonable inferences drawn from the evidence that support the verdict. *Mshihiri*, 816 F.3d at 1004. On appeal, we will not upset a jury's verdict unless no reasonable jury could find the defendant guilty beyond a reasonable doubt. *Thomas*, 565 F.3d at 441.

Schropp's argument boils down to an attack on the credibility of Richards and Winkelbauer, witnesses he dismisses as "drug riddled" persons that no reasonable jury could believe. When we evaluate a challenge to the sufficiency of the evidence, "we do not consider attacks on witnesses' credibility." *United States v. Colton*, 742 F.3d 345, 348 (8th Cir. 2014) (per curiam) (quotation and citation omitted). Credibility assessment is the unique province of the jury. Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable jury could have found that Schropp had a relationship with Richards and hired him to burn down PKM's manufacturing plant. Schropp, motivated by PKM's dire financial situation, used Richards to set the fire that burned the plant two days after he paid for Richards's release from jail. The nonarson charges were sufficiently proven with the evidence of the insurance claims that Schropp faxed to Sentry and the money that Sentry mailed Schropp from its Stevens Point, Wisconsin office.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____